DUNN, Appellant,

v.

BRUZZESE Jr., Appellee.

[Cite as *Dunn v. Bruzzese,* 172 Ohio App.3d 320, 2007-Ohio-3500.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 06 JE 2.

Decided June 29, 2007.

322

Irene K. Makrides, for appellant.

Montgomery, Rennie & Johnson, Linda L. Woeber, and Kimberly Vanover Riley, for appellee.

DeGenaro, Presiding Judge.

{¶ 1} This appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Plaintiff-appellant, Drema Dunn, appeals the decision of the Jefferson County Court of Common Pleas that granted summary judgment to defendant-appellee, Judge Joseph Bruzzese Jr. Dunn raises two issues on appeal.

{¶ 2} First, Dunn contends that the trial court erred in granting summary judgment to Judge Bruzzese on her claims for promissory estoppel and implied contract. However, none of the "promises" to which Dunn refers appear clear and unambiguous enough to form the basis of a promissory-estoppel claim. Furthermore, there is no evidence showing that it was reasonably certain that Dunn and Judge Bruzzese had a meeting of the minds on the terms of Dunn's future employment as a judicial secretary.

{¶ 3} Second, Dunn claims that the trial court erred when granting summary judgment on her age-discrimination claim against Judge Bruzzese. However, the undisputed evidence shows that Dunn's behavior had been a consistent distraction in the workplace and that the judge had tried resolving the issue in different ways to no avail. This conduct shows that her dismissal was not a pretext for age discrimination.

{¶ 4} For these reasons, the trial court's decision is affirmed.

Facts

{¶ 5} In 1983, Dunn began working as a legal secretary in Judge Bruzzese's law firm. During this time, she was assigned as the legal secretary to four of the firm's six attorneys, including Judge Bruzzese. Prior to Dunn's employment at the firm, Judge Bruzzese was elected to a part-time judicial position on the Jefferson County Court. When Dunn expressed a desire for better benefits, in 1991, Judge Bruzzese made her a part-time employee of the county court system as his secretary, in part to prevent her from finding another job. Over the course of her employment with the law firm, Judge Bruzzese complimented her work and told her he always wanted her to be his secretary.

{¶ 6} In November 1996, Judge Bruzzese was elected to the Jefferson County Court of Common Pleas, and Dunn became his judicial secretary. Judge Bruzzese retained the prior judge's secretary, Rita Bates, as bailiff. During Dunn's employment at the courthouse, Judge Bruzzese complimented her abilities and told her he always wanted her to be his secretary.

{¶ 7} The relationship between Bates and Dunn was described by witnesses as "dysfunctional" because of the "bullshit" that went on between them. There was more than one reason for the tensions between the two. First, the two disagreed over aspects of their job descriptions, an issue that Judge Bruzzese eventually tried to resolve by writing specific job descriptions. Dunn was also bothered by the fact that Bates had a higher salary and would take more days off work.

{¶ 8} While she worked at the law firm, Dunn would occasionally take a series of actions that Judge Bruzzese termed a "dream freeze." During these periods, Dunn would perform her work more slowly and less efficiently and would act coldly toward the judge. For instance, during a "dream freeze," Dunn would ignore the judge while taking a personal phone call until her call was complete. These periods were rare at the law firm, but became more frequent at the courthouse. Judge Bruzzese said these periods would occur whenever Dunn was upset with him and that she became upset with him when he didn't take her side in a dispute with Bates. Other witnesses saw the behavior that was termed a "dream freeze."

{¶ 9} Eventually, Judge Bruzzese tired of Dunn's complaints and behavior and, on February 5, 2002, gave her the option of either resigning or being terminated. Dunn refused to resign and was terminated by Judge Bruzzese on February 28, 2002. Judge Bruzzese hired a 20–year old female as Dunn's replacement.

{¶ 10} On September 24, 2002, Dunn brought an action in Federal District Court against Judge Bruzzese and the Jefferson County Commissioners, claiming violations of federal statutes, age discrimination, breach of implied contract, and promissory estoppel. After instituting this action, Dunn filed an administrative

action with the Equal Employment Opportunity Commission ("EEOC"). Although Dunn moved to voluntarily dismiss her federal suit without prejudice, the Federal District Court dismissed Dunn's federal claims with prejudice, but dismissed her state claims without prejudice on February 2, 2004.

{¶ 11} On May 5, 2005, Dunn filed a complaint in the Jefferson County Court of Common Pleas raising the state claims that were dismissed without prejudice by the federal court. Judge Bruzzese moved for summary judgment on October 31, 2005. Dunn responded and filed her own motion for summary judgment. On January 6, 2006, the trial court granted Judge Bruzzese's motion for summary judgment in its entirety and dismissed Dunn's case.

## Standard of Review

{¶ 12} In this appeal, Dunn argues that the trial court improperly granted summary judgment to Judge Bruzzese. When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court and, therefore, engages in a de novo review. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121. Under Civ.R. 56, summary judgment is proper only when the movant demonstrates that viewing the evidence most strongly in favor of the non-movant, reasonable minds must conclude that no genuine issue as to any material fact remains to be litigated, and the moving party is entitled to judgment as a matter of law. *Doe v. Shaffer* (2001), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243. A fact is material when it affects the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.* (1999), 135 Ohio App.3d 301, 304, 733 N.E.2d 1186.

{¶ 13} When moving for summary judgment, a party must produce some facts that suggest that a reasonable fact-finder could rule in her favor. *Brewer v. Cleveland Bd. of Edn.* (1997), 122 Ohio App.3d 378, 386, 701 N.E.2d 1023. "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264. The nonmoving party has the reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293, 662 N.E.2d 264.

## Promissory Estoppel and Implied Contract

{¶ 14} In her first assignment of error, Dunn argues:

{¶ 15} "The trial court erred to the prejudice of Appellant in granting summary judgment on Appellant's claims based on promissory estoppel and implied contract."

{¶ 16} According to Dunn, Judge Bruzzese had the authority to promise her continued employment with the county as his judicial secretary and actually made that promise, and she relied on that promise to her detriment. Judge Bruzzese contends that he did not have the authority to make such a promise, that he did not make a legally enforceable promise, and that Dunn cannot prove detrimental reliance upon such a promise.

{¶ 17} As Dunn concedes, she was not a contractual employee. "A public officer or public general employee holds his position neither by grant nor contract, nor has any such officer or employee a vested interest or private right of property in his office or employment." *State ex rel. Gordon v. Barthalow* (1948), 150 Ohio St. 499, 83 N.E.2d 393, paragraph one of the syllabus.

{¶ 18} Furthermore, as a member of the unclassified civil service, she was an at-will employee. In Ohio, the civil service includes all offices and positions of trust or employment in the service of the state, the counties, cities, city health districts, general health districts and city school districts. R.C. 124.01(A). The civil service is then divided into the classified and unclassified service. R.C. 124.11. The classified service comprises all civil service personnel not specifically included in the unclassified service pursuant to R.C. 124.11(A). See R.C. 124.11(B). R.C. 124.11(A)(8) states that any elective officer, other than a state elective officer, is entitled to "three clerical and administrative support employees," who are unclassified civil service employees. Accordingly, Dunn was an unclassified civil servant.

{¶ 19} The significance between "classified" service and "unclassified" service "is that those employees in the classified service can be removed only for good cause pursuant to the procedures of R.C. 124.34. Employees in the unclassified service are not entitled to this protection." *Smith v. Sushka* (1995), 103 Ohio App.3d 465, 470, 659 N.E.2d 875. Unclassified employees are "appointed at the discretion of the appointing authority and serve[ ] at the pleasure of such authority." *State ex rel. Hunter v. Summit Cty. Human Resource Comm.* (1998), 81 Ohio St.3d 450, 453, 692 N.E.2d 185. Therefore, unclassified civil servants are at-will employees. *Lawrence v. Edwin Shaw Hosp.* (1988), 57 Ohio App.3d 93, 94, 566 N.E.2d 1256.

{¶ 20} Generally, an employment-at-will relationship may be altered by promissory estoppel or implied contract. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 103–104, 19 OBR 261, 483 N.E.2d 150. These are two distinct ways of establishing liability.

{¶ 21} A plaintiff must establish the following four elements to prove a claim of promissory estoppel: (1) a clear and unambiguous promise; (2) reliance on the promise; (3) the reliance is reasonable and foreseeable; and (4) the party relying on the promise was injured by his or her reliance. *Patrick v. Painesville Commercial Properties, Inc.* (1997), 123 Ohio App.3d 575, 583, 704 N.E.2d 1249.

{¶ 22} There is a dispute between the parties regarding whether Judge Bruzzese had the power to alter the relationship at all. As the concurring opinion demonstrates, if Judge Bruzzese did not have the power to alter the relationship, then Dunn could not have reasonably relied on his promise. However, it is unnecessary to reach this issue because Judge Bruzzese did not even make a clear and unambiguous promise.

{¶ 23} "A clear and unambiguous promise is the type that a promisor would expect to induce reliance." *Casillas v. Stinchcomb*, 6th Dist. No. E–04–041, 2005-Ohio-4019, 2005 WL 1845318, at ¶ 19. Thus, praise with respect to job performance and discussion of future career development, standing alone, "will not modify the employment-at-will relationship." *Helmick v. Cincinnati Word Processing, Inc.* (1989), 45 Ohio St.3d 131, 543 N.E.2d 1212, paragraph three of the syllabus. Furthermore, the promise forming the basis of a promissory estoppel claim must be specific. "A promise of future benefits or opportunities without a specific promise of continued employment does not support a promissory estoppel exception to the employment-at-will doctrine." *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph two of the syllabus.

{¶ 24} In this case, Dunn has failed to demonstrate a genuine issue regarding whether Judge Bruzzese clearly and unambiguously promised that continued employment. The statements that Dunn relies upon are all either praise with respect to job performance, discussion of future career development, or promises of future opportunities. For instance, before he was elected to the Court of Common Pleas, Judge Bruzzese told Dunn that "he never wanted her to quit," that he was going to take Dunn to the court with him if he became a judge and pay her what she was worth, that he "always" wanted Dunn working for him, that she was "the greatest secretary ever" and he was looking forward to "10 (or 20)" more years with her, that "[h]e never wanted anything to happen that [Dunn] didn't work for him." Shortly after his election, Judge Bruzzese told Dunn, "[T]his is where we're going to retire from." At a later point in time, Judge Bruzzese was considering leaving the bench, but told Dunn's mother that her daughter would be okay because, "Where I go, Drema goes. The day that Drema retires is the day that I retire."

{¶ 25} Since none of these statements are clear, unambiguous promises of continued employment, Dunn cannot prove a claim of promissory estoppel and that the trial court properly granted summary judgment to Judge Bruzzese on this issue.

{¶ 26} Dunn's other claim, for breach of an implied contact, is distinct from her promissory estoppel claim. The Second District explained implied contracts in *Stepp v. Freeman* (1997), 119 Ohio App.3d 68, 74, 694 N.E.2d 510.

{¶ 27} "It is well established that there are three categories of contracts: express, implied in fact, and implied in law. *Legros v. Tarr* (1989), 44 Ohio St.3d 1, 6, 540 N.E.2d 257, 262–263. Express and implied-in-fact contracts differ from contracts implied in law in that contracts implied in law are not true contracts. *Sabin v. Graves* (1993), 86 Ohio App.3d 628, 633, 621 N.E.2d 748. Implied-in-law contracts are a legal fiction used to effect an equitable result. Id. Because a contract implied in law is a tool of equity, the existence of an implied-in-law contract does not depend on whether the elements of a contract are proven. Id.

{¶ 28} "On the contrary, the existence of express or implied-in-fact contracts does hinge upon proof of all of the elements of a contract. *Lucas v. Costantini* (1983), 13 Ohio App.3d 367, 368, 13 OBR 449, 469 N.E.2d 927, 928–929. Express contracts diverge from implied-in-fact contracts in the form of proof that is needed to establish each contractual element. *Penwell v. Amherst Hosp.* (1992), 84 Ohio App.3d 16, 21, 616 N.E.2d 254, 257–258. In express contracts, assent to the terms of the contract is actually expressed in the form of an offer and an acceptance. *Lucas,* supra. On the other hand, in implied-in-fact contracts the parties' meeting of the minds is shown by the surrounding circumstances, including the conduct and declarations of the parties, that make it inferable that the contract exists as a matter of tacit understanding. *Point E. Condominium Owners' Assn. v. Cedar House Assn.* (1995), 104 Ohio App.3d 704, 712, 663 N.E.2d 343, 348–349. To establish a contract implied in fact a plaintiff must demonstrate that the circumstances surrounding the parties' transaction make it reasonably certain that an agreement was intended. *Lucas,* supra."

{¶ 29} In this case, the facts do not demonstrate that it was "reasonably certain" that Dunn and Judge Bruzzese came to a "meeting of the minds" over the terms of Dunn's future employment as Judge Bruzzese's judicial secretary. Dunn does not even attempt to point to any facts establishing an implied contract. Since there is no contract, it is irrelevant whether the nonexistent contract violated statutes or administrative law. Accordingly, the trial court properly granted summary judgment to Judge Bruzzese on this claim as well.

{¶ 30} Dunn's arguments concerning both her claim for promissory estoppel and implied contract are meritless. Accordingly, her first assignment of error is meritless.

## Age Discrimination

{¶ 31} In her second assignment of error, Dunn argues:

{¶ 32} "The trial court erred to the prejudice of Appellant in granting summary judgment on Appellant's claim based on age discrimination."

{¶ 33} Judge Bruzzese moved for summary judgment on Dunn's age-discrimination claim for two reasons. First, he claimed that Dunn' age discrimination claim was barred by the doctrine of election of remedies because she sought administrative relief before she filed her claim for age discrimination in state court. Second, he argued that her age-discrimination claim failed on its merits. As long as one of these reasons forms a sufficient basis for granting summary judgment to Judge Bruzzese, the trial court's decision will be affirmed. *State ex rel. Carter v. Schotten* (1994), 70 Ohio St.3d 89, 92, 637 N.E.2d 306.

## Election of Remedies

{¶ 34} Judge Bruzzese first argues that Dunn's claim is barred by the doctrine of election of remedies. Under that doctrine, a claimant is prohibited from seeking relief for age discrimination in one legal avenue after first pursuing that relief in another legal avenue. Ohio provides people with three ways a person may seek relief for a claim of age discrimination: (1) a lawsuit under R.C. 4112.02(N), which prohibits discrimination based on, among other things, age and provides for a civil remedy for such a violation; (2) a lawsuit under R.C. 4112.14(B), which prohibits discrimination against someone who is 40 years old or older; (3) a lawsuit under R.C. 4112.99, which allows an action for damages, injunctive relief, or any other appropriate relief for any violation of R.C. Chapter 4112; and (4) administrative remedies under R.C. 4112.05(B)(1). Filing a claim with the EEOC counts as seeking an administrative remedy for the purposes of R.C. 4112.05(B)(1). Ohio Adm.Code 4112–3–01(D).

{¶ 35} Filing an action under most of these sections precludes recovery under the other sections. R.C. 4112.02(N) bars anyone filing under that section "from instituting a civil action under section 4112.14 of the Revised Code and from filing a charge with the commission under section 4112.05 of the Revised Code" with respect to the practices complained of. Likewise, R.C. 4112.14(B) prohibits anyone "from instituting a civil action under division (N) of section 4112.02 of the Revised Code or from filing a charge with the Ohio civil rights commission ['OCRC'] under section 4112.05 of the Revised Code" with respect to the practices complained of. Finally, anyone who files a "charge under division

(B)(1) of section 4112.05 of the Revised Code, with respect to the unlawful discriminatory practices complained of, is barred from instituting a civil action under section 4112.14 or division (N) of section 4112.02 of the Revised Code." R.C. 4112.08. The only exception to the requirement to elect a remedy is the bringing of a suit under R.C. 4112.99. *Smith v. Friendship Village of Dublin, Ohio, Inc.* (2001), 92 Ohio St.3d 503, 751 N.E.2d 1010, syllabus.

{¶ 36} The plain language of R.C. Chapter 4112 provides "that individuals alleging age discrimination must choose between an administrative or judicial action." Id. at 506, 751 N.E.2d 1010. "[T]he General Assembly was aware that individuals might attempt to commence both administrative and judicial proceedings pursuant to R.C. Chapter 4112. So, in clear language, the General Assembly expressed its intent that an election must be made." Id.

{¶ 37} In this case, Dunn filed both statutory claims in federal court and administrative claims with the EEOC before bringing her statutory claims against Judge Bruzzese in state court. The concurring opinion states that Dunn filed an administrative age-discrimination claim in March 2002 and then raised her statutory age-discrimination claims in federal court in late 2002. This description of the facts is contrary to both the facts presented by the parties and the record in this case.

{¶ 38} In his brief to this court, Judge Bruzzese states that Dunn filed her administrative age-discrimination claim on October 10, 2002, not in March 2002. He also states that Dunn's complaint in Federal District Court was filed on September 24, 2002, before the administrative claim was filed. Dunn also states that she had not filed any "charge of discrimination at all with any agency, state or federal," when she filed her complaint in federal court. These facts are borne out by the record.

{¶ 39} The record contains the charge of discrimination that Dunn filed with the EEOC. That charge shows that it was signed by Dunn before a representative of the OCRC on March 10, 2002. However, the document does not indicate that it was ever filed with the OCRC on this date. Instead, the only file-stamp date on the document shows that it was filed with the EEOC on October 10, 2002. Since we must view all the facts in the light most favorable to Dunn for the purposes of summary judgment, we must conclude that this charge was first filed with an administrative agency on the only date stamped on the document, October 10, 2002.

{¶ 40} The record does not show exactly when Dunn filed her complaint in Federal District Court. Instead, the record contains a copy of a complaint in the federal case that is not file-stamped. That complaint contains a certificate of service showing that it was served on the defendants' attorney on December 30, 2002. However, the text of that complaint shows that it is not the original

complaint filed in that case; rather, it is an amended complaint. The only parts of the complaint that indicate that it is an amended complaint are the parts dealing with the federal court's jurisdiction. Namely, the document indicates that it was amended to reflect the fact that Dunn had received her right-to-sue letter from the EEOC within 90 days of the amendment.

{¶ 41} Putting these facts together, and interpreting them in the light most favorable to Dunn, the nonmovant, we must conclude that Dunn's complaint in Federal District Court was filed before her administrative claim. Since these are the facts argued by both of the parties, this conclusion appears beyond dispute.

{¶ 42} Dunn's suit in federal court stated a claim under R.C. 4112.14. That claim was voluntarily dismissed without prejudice. While the federal claim was pending, Dunn filed a complaint with the EEOC, but did not specifically state that she was doing so to preserve her federal age-discrimination claims. Dunn then filed the complaint in this case, again stating a cause of action under R.C. 4112.14.

{¶ 43} When Dunn filed her suit in federal court, she clearly elected to pursue the remedies available under R.C. 4112.14. Once Dunn instituted her federal suit, she could not seek administrative remedies; she had locked herself in pursuing remedies under R.C. 4112.14. This does not change merely because Dunn's federal suit was voluntarily dismissed. R.C. 4112.14 prevents a person from filing for administrative remedies after instituting a lawsuit, not after receiving a merit decision in a lawsuit. Thus, Dunn was prevented from receiving any remedy under Ohio law in her administrative claim. This situation did not change when Dunn's federal claim was dismissed. R.C. 4112.14 still prevented her from receiving any administrative remedy because she had previously instituted a civil action under R.C. 4112.14. Thus, Dunn's original election to seek a remedy via a civil lawsuit was still effective.

{¶ 44} The concurrence believes the opposite, concluding that Dunn's voluntary dismissal of her federal suit leaves her in the same position as if she had never filed her federal claim in the first place. However, the case law that the concurrence cites for this proposition stands for a wholly different proposition.

{¶ 45} In *DeVille Photography, Inc. v. Bowers* (1959), 169 Ohio St. 267, 8 O.O.2d 281, 159 N.E.2d 443, a business owed a sales-tax assessment. The business voluntarily declared bankruptcy, and the referee in bankruptcy declared that the sales-tax claim should be disallowed. The business then voluntarily dismissed the bankruptcy action. The Attorney General then instituted proceedings to force the business to pay the sales-tax assessment. The business claimed that the referee's decision in the bankruptcy proceeding was res judicata and that the state could not collect those funds.

{¶ 46} The Ohio Supreme Court recognized "that the order of a referee in bankruptcy allowing or disallowing a claim is a judgment and the order is res judicata in subsequent proceedings." Id. at 269, 8 O.O.2d 281, 159 N.E.2d 443. However, it held that a judgment made in a case that has been voluntarily dismissed cannot be res judicata on the same issue in a later case.

{¶ 47} "A dismissal without prejudice * * *. It gives to the complaining party the right to state a new case, if he can. But it takes away no right of defense to such suit save that which might be based on the bar of the first action. * * * 'Where an action or proceeding is dismissed without prejudice, rulings preceding the final judgment or decree of dismissal are, as a general proposition, not capable of becoming res judicata'" Id. at 272, 8 O.O.2d 281, 159 N.E.2d 443, quoting 149 A.L.R. 561.

{¶ 48} Thus, *DeVille* stands for the proposition that an interlocutory order in a case that has been voluntarily dismissed cannot act as res judicata. It is in regard to the issue of res judicata that the voluntarily dismissed case "leaves the parties as if no action had been brought at all."

{¶ 49} The doctrine of election of remedies is distinct from the doctrine of res judicata. "The doctrine of election of remedies involves choosing between two or more different and co-existing modes of procedure and relief permitted by law on the same facts. It is a choice made with knowledge between two inconsistent substantive rights, either of which may be utilized at the discretion of the party, who cannot, however, employ both." (Citations omitted.) *Welch v. Welch,* 11th Dist. No. 2006–L–035, 2006-Ohio-7013, 2006 WL 3833849, at ¶ 13. Thus, the doctrine of election of remedies is concerned with the procedure used, not the outcome of a case

{¶ 50} In contrast, the doctrine of res judicata bars all claims that were litigated in a prior action as well as all claims that might have been litigated in that action. *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 382, 653 N.E.2d 226. The doctrine " 'encourages reliance on judicial decisions, bars vexatious litigation, and frees the court to resolve other disputes.'" *National Amusements, Inc. v. Springdale* (1990), 53 Ohio St.3d 60, 62, 558 N.E.2d 1178, quoting *Brown v. Felsen* (1979), 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767. This doctrine does not concern itself with the procedure used to reach a judgment, only that a final judgment has been reached.

{¶ 51} The statutes governing age discrimination in Ohio do not rely on how a case is ultimately decided before applying the doctrine of election of remedies. Instead, they apply when either a civil action is instituted or an administrative charge is filed. See R.C. 4112.02(N); R.C. 4112.14(B); R.C. 4112.08. Applying *DeVille*'s holding to this situation would be tantamount to ignoring this plain

statutory language. Accordingly, the remedy Dunn first elected, relief under R.C. 4112.14, is the only remedy she is entitled to receive. Dunn's complaint in this case seeks the same relief she originally sought in federal court. Accordingly, the doctrine of election of remedies does not bar Dunn's age-discrimination claim.

### Merits of Age Discrimination Claim

{¶ 52} R.C. 4112.14(A) prohibits age discrimination. That statute provides:

{¶ 53} "No employer shall * * * discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee." Id.

{¶ 54} Absent direct evidence of age discrimination, the Ohio Supreme Court has adopted the burden-shifting analytic framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, for use in Title VII cases to prove discriminatory intent. See *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146, 147–148, 6 OBR 202, 451 N.E.2d 807. The purpose for shifting burdens of proof in discrimination claims is to assure that the employee has a day in court despite the unavailability of direct evidence. See *St. Mary's Honor Ctr. v. Hicks* (1993), 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407.

{¶ 55} "In order to establish a prima facie case of age discrimination, violative of R.C. [4112.14], in an employment discharge action, plaintiff-employee must demonstrate (1) that he was a member of the statutorily-protected class, (2) that he was discharged, (3) that he was qualified for the position, and (4) that he was replaced by, or that his discharge permitted the retention of, a person not belonging to the protected class. Defendant-employer may then overcome the presumption inherent in the prima facie case by propounding a legitimate, nondiscriminatory reason for plaintiff's discharge. Finally, plaintiff must be allowed to show that the rationale set forth by defendant was only a pretext for unlawful discrimination." *Barker*, 6 Ohio St.3d 146, 6 OBR 202, 451 N.E.2d 807, syllabus.

{¶ 56} In this case, Judge Bruzzese concedes that Dunn presented sufficient evidence to establish a prima facie case of age discrimination for the purposes of summary judgment, and Judge Bruzzese has conceded this fact. The facts, when viewed in the light most favorable to her, reveal the following: (1) Dunn was over 40 years old and, therefore, a member of the protected class; (2) Dunn was discharged from her position by Judge Bruzzese; (3) Dunn had been a legal secretary for years, for years working for Judge Bruzzese in particular, and

this experience made her qualified for the position; and, (4) Dunn's replacement was much younger than 40 years old and, therefore, outside the protected class. These facts, for the purposes of summary judgment, establish a prima facie case of age discrimination under R.C. 4112.14.

{¶ 57} Likewise, Dunn conceded that Judge Bruzzese had stated a legitimate, nondiscriminatory reason for Dunn's discharge. According to Judge Bruzzese's undisputed testimony, Dunn's behavior at work was making him "miserable." Dunn was angry that another employee, one who had been working for the county longer than Dunn, was earning more than she was. She repeatedly voiced her displeasure to the judge, the other employee, and other people in the courthouse. Furthermore, when she would get angry with Judge Bruzzese, she would slow her work down and ignore him, periods the judge referred to as "dream freezes." This behavior would be unacceptable in any work environment and constitutes a legitimate, nondiscriminatory reason for Dunn's discharge.

{¶ 58} The real disagreement between the parties is whether Judge Bruzzese's legitimate, nondiscriminatory reason for firing Dunn was merely a pretext for age discrimination. To establish pretext, the employee must show by a preponderance of the evidence that the employer's proffered reason is not worthy of credence or that discriminatory reasons more likely motivated the employer's decision. *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207. In order to determine whether a proffered reason is worthy of credence, a court must look to whether the reasons offered are, on the facts involved, objectively false and refrain from weighing the sufficiency of those reasons. *Reeves v. Sanderson Plumbing Prod., Inc.* (2000), 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105. A party can show that discrimination more likely motivated the employer's decision by eliminating all legitimate reasons for rejecting an applicant. Id.

{¶ 59} Judge Bruzzese argues that Dunn cannot establish pretext because she cannot produce any evidence of discrimination other than the evidence that established her prima facie case of age discrimination. He further contends that the evidence Dunn does attempt to rely on does not actually demonstrate age discrimination.

{¶ 60} Dunn argues that she could rely exclusively on the evidence supporting her prima facie case if Judge Bruzzese's reason was sufficiently incredible. She contends that the judge's reasons were purely subjective, without corroboration, and inconsistent with the testimony of other witnesses. She argues that he would have never brought her with him to the courthouse if her behavior had been as bad as he states. Dunn also maintains that the judge's testimony about the

amount of Dunn's complaints is vastly overrated. She further argues that Judge Bruzzese did not follow the progressive disciplinary framework outlined in the Jefferson County employee handbook and had repeatedly complimented her on her work.

{¶ 61} Contrary to Dunn's arguments, there is a lot of evidence in the record corroborating his description of Dunn's behavior. Judge Bruzzese testified that Dunn's behavior in the workplace was making him "miserable." According to Judge Bruzzese, Dunn "was always complaining about everything," especially the difference in rate of pay between her and Bates. He was particularly bothered by the fact that Dunn would talk about her complaints with people all over the courthouse. Judge Bruzzese also described "dream freezes," periods when Dunn would ignore him to talk on the phone, fail to correct obvious mistakes in his dictation, call off work, and generally slow down her rate of work. Judge Bruzzese testified that these "dream freezes," which could last for a couple of weeks, were "fairly rare" at the law firm, but became much more frequent after he became a judge.

{¶ 62} This testimony was supported by the testimony of Bates and the two court reporters who worked in Judge Bruzzese's chambers. Bates testified that the atmosphere in the office was "very uncomfortable" due to the "personality problems" between her and Dunn. She said the problems would be so bad that there were days when she would "be upset and cry all day." Bates had heard the judge use the term "dream freeze" in relation to Dunn when Dunn was upset with Judge Bruzzese and described Dunn during these times as "very quiet." Bates understood that the judge found Dunn hard to work with during a "dream freeze." Bates testified that Judge Bruzzese had spoken to her and Dunn about ways to dissolve the tension between them.

{¶ 63} Susan Schweiss, one of the court reporters, testified that she had also heard the judge use the phrase "dream freeze" in regard to Dunn. She confirmed that Dunn would complain about Bates's attendance and the difference in pay between Dunn and Bates. Schweiss heard that Dunn had been making these complaints to many people in the courthouse. She confirmed that Bates and Dunn would argue. However, she stated that she never saw Dunn be disrespectful toward the judge, even though she began to complain about him more often toward the end of her employment at the court.

{¶ 64} The other court reporter, Becky Wood, testified that the atmosphere in Judge Bruzzese's office was "dysfunctional" because of issues between Dunn and Bates, calling some of what went on in the office "bullshit." On more than one occasion, Wood spoke with the judge about the relationship between Bates and Dunn. Wood thought that both Dunn and Bates believed that she should be "queen bee" of Judge Bruzzese's chambers and that this was the source of their

problems. Wood testified that Dunn "spent a lot of time going from office to office when she was unhappy about Rita or something that was going on," despite the judge's request that what happened in the office stay in the office. Other people in the courthouse would then tell Wood about Dunn's complaints. Wood felt that Dunn was disrespectful of the judge behind his back.

{¶ 65} Wood had also heard Judge Bruzzese use the phrase "dream freeze" with regard to Dunn. According to Wood, a "dream freeze" was a pattern of behavior that Dunn would engage in when she was upset. Wood said that Dunn would be "real cool" and "quiet" during a dream freeze. Wood believed this was Dunn's way of punishing the judge when she was unhappy with him.

{¶ 66} This testimony all supports Judge Bruzzese's description of the office situation when he decided to terminate Dunn. Furthermore, this testimony explains why Judge Bruzzese may not have realized Dunn would be such a problem employee at court, since "dream freezes" occurred much less frequently at the law office.

{¶ 67} Dunn places a great deal of reliance on Judge Bruzzese's failure to follow the progressive disciplinary framework outlined in the Jefferson County employee handbook. Judge Bruzzese tries to explain that he believed the handbook did not cover court employees, but it appears this issue is irrelevant. "[A]n inference of age discrimination does not arise from the fact that an employer does not follow its termination procedures where there is no evidence that the terminated employee was treated less favorably than others on account of his age." *Swiggum v. Ameritech Corp.* (Sept. 30, 1999), 10th Dist. No. 98AP–1031, 98AP–1040, 1999 WL 771022, at *18, citing *Stanojev v. Ebasco Servs., Inc.* (C.A.2, 1981), 643 F.2d 914, 923.

{¶ 68} When viewing all of this evidence in the light most favorable to Dunn, we cannot conclude that she has demonstrated a genuine issue of material fact regarding whether Judge Bruzzese's reason for discharging Dunn was pretextual. The undisputed evidence shows that Dunn's behavior had been a consistent distraction in the workplace and that the judge had tried resolving the issue in different ways to no avail. Accordingly, the trial court properly granted summary judgment to Judge Bruzzese. Dunn's second assignment of error is meritless.

Conclusion

{¶ 69} Both of Dunn's assignments of error are meritless. Dunn failed to demonstrate a genuine issue of material fact on any of her claims against Judge

Bruzzese. Accordingly, the judgment of the trial court granting summary judgment to Judge Bruzzese is affirmed.

*Judgment affirmed.*

VUKOVICH, J., concurs.

WAITE, J., concurs in judgment only.

WAITE, J., concurring in judgment only.

{¶ 70} Although I agree with the majority that the trial court's judgment should be affirmed, I disagree with the manner in which the age-discrimination portion of the appeal was resolved. Thus, I concur in judgment only. Unlike the majority, I believe that the trial court was correct when it concluded that the statutorily prescribed election of remedies barred appellant from seeking any further relief in a civil action in state court because she had already filed an administrative action with the Equal Employment Opportunity Commission ("EEOC"). It is apparent, though, that even if the trial court was incorrect regarding the election of remedies, appellant has failed to produce evidence to support the elements of an age-discrimination claim, and summary judgment was properly granted to appellee. Additionally, I believe that the majority has not completely addressed some matters regarding appellant's claims of promissory estoppel and implied contract.

{¶ 71} The majority correctly concludes that appellant provided insufficient evidence to establish that Judge Bruzzese had made a clear and unambiguous promise of continuous or long-term employment, which is one of the elements of her claim of promissory estoppel. The record does not reasonably demonstrate any clear terms of an implied contract, including any actual offer or acceptance of long-term employment. It should also be pointed out, though, that the trial court and appellee were correct when they reasoned that both claims should also fail because Judge Bruzzese is legally prohibited from making any promise of continuous, permanent, or long-term employment to appellant. It is clear that appellant was a government employee, subject to the laws affecting government employees. As a matter of law, she must be treated as an "unclassified" employee under R.C. 124.11:

{¶ 72} "(A) The unclassified service shall comprise the following positions, which shall not be included in the classified service, and which shall be exempt from all examinations required by this chapter:

{¶ 73} " * * *

{¶ 74} "(8) Four clerical and administrative support employees for each of the elective state officers, *and three clerical and administrative support employees*

*for other elective officers* and each of the principal appointive executive officers, boards, or commissions, except for civil service commissions, that are authorized to appoint such clerical and administrative support employees;

{¶ 75} " * * *

{¶ 76} "(10) Bailiffs, constables, official stenographers, and commissioners of courts of record, deputies of clerks of the courts of common pleas who supervise, or who handle public moneys or secured documents, *and such officers and employees of courts of record* and such deputies of clerks of the courts of common pleas *as the director of administrative services finds it impracticable to determine their fitness by competitive examination.*" (Emphasis added.)

{¶ 77} Whether under section R.C. 124.11(A)(8) or (A)(10), the parties appear to agree in principle that appellant was an unclassified public employee. Ohio Adm.Code 123:1–47–01(A)(86) provides: " 'Unclassified service'—Means all offices and positions which are exempt from all examinations and which provide no tenure under the law are unclassified. Appointment to a position in the unclassified service may be made at the discretion of the appointing authority and the incumbent may be removed, suspended or reduced from the position at the pleasure of the appointing authority." Thus, by law, unclassified employment is by definition employment without tenure and subject to the pleasure of the appointing authority. *Smith v. Sushka* (1995), 103 Ohio App.3d 465, 470, 659 N.E.2d 875. "An unclassified employee is appointed at the discretion of the appointing authority and serves at the pleasure of such authority." *State ex rel. Hunter v. Summit Cty. Human Resource Comm.* (1998), 81 Ohio St.3d 450, 453, 692 N.E.2d 185.

{¶ 78} What appellant is essentially trying to prove is that Judge Bruzzese unilaterally converted or attempted to convert her position into something other than unclassified employment, giving her at least some of the rights of classified employees, such as the right to have a definite term of employment. *Krickler v. Brooklyn,* 149 Ohio App.3d 97, 2002-Ohio-4278, 776 N.E.2d 119, from the Eighth District Court of Appeals, involved a similar claim made by a personnel/records clerk working for the city of Brooklyn, a suburb of Cleveland. The employee alleged that the former Mayor, John Coyne, induced her to take the job by promises and assurances that it was a permanent classified position and that she would not be subject to the rules of unclassified employment. When the mayoral administration changed, she was fired. She brought claims of wrongful discharge and promissory estoppel against the former mayor and the city of Brooklyn.

{¶ 79} The Eighth District Court of Appeals held: "In order to maintain a claim for promissory estoppel against a municipality, however, [the plaintiff] must show that Mayor Coyne's representations were within his power. If he had no authority to determine whether a position is in the classified civil service or to

create such a position, then she cannot establish the element of justifiable reliance." Id. at ¶ 8. The Eighth District further held: "[H]er status as a classified or unclassified employee is governed by R.C. 124.11, and not by the 'appointing authority,' in this case the mayor. * * * The mayor has no authority to render an unclassified position classified, or vice versa, in violation of R.C. 124.11." Id. at ¶ 9.

{¶ 80} Thus, it would be impossible for appellant to enforce any promise of permanent or long-term employment that Judge Bruzzese allegedly had made to her because he had no authority to convert an unclassified position into a position that had additional rights, including the possibility of long-term employment, only afforded to classified employees. As the majority points out, reasonable reliance is an essential element of appellant's claim of promissory estoppel. If appellant cannot prove reasonable reliance, she cannot establish promissory estoppel.

{¶ 81} With respect to appellant's claim of implied contract, the parties could not enter into an enforceable contract that was in direct violation of state statutes and administrative law. Illegal promises cannot be contractually enforced. A contract containing such promises will either have them stricken from the contract, if that is possible, or the promises will render the entire contract void. *Extine v. Williamson Midwest, Inc.* (1964), 176 Ohio St. 403, 405, 27 O.O.2d 375, 200 N.E.2d 297. Illegal contracts are void ab initio and legally unenforceable. "Courts of law and courts of equity will decline to enforce obligations created by contract if the contract is illegal or the consideration given for it is illegal, immoral, or against public policy." *Langer v. Langer* (1997), 123 Ohio App.3d 348, 354, 704 N.E.2d 275. Appellant is attempting to use both the court of law (in her contract claim) and the court of equity (in her promissory-estoppel claim) to enforce an illegal provision of a government contract, namely, a provision that converts statutorily dictated at-will employment to long-term permanent employment. Neither the court of common pleas nor this court has the authority to enforce any such a provision.

{¶ 82} Turning now to the age-discrimination claim, the trial court correctly noted that there is a procedural minefield awaiting an employee who attempts to prosecute such a claim in Ohio. Appellee argued that one aspect of this procedural minefield, namely the election of remedies, bars appellant from pursuing her claim in state court. The trial court accepted appellee's argument and relied on it as one of two reasons for granting summary judgment to appellee. The majority opinion does not rely on the election of remedies as a basis for affirming the trial court judgment. It is my opinion, though, that the trial court was correct in its analysis concerning appellant's election of remedies.

{¶ 83} This matter appears to be one of first impression, because neither I nor the majority can find cases on point with the current factual situation. The trial

court was fully aware, however, that in Ohio, there are four options under state law to pursue an age-discrimination claim, aside from the possibility of pursuing federal claims. A plaintiff may pursue a judicial remedy under three different code sections: R.C. 4112.02, 4112.14, or 4112.99. In the instant case, appellant filed a claim in the Jefferson County Court of Common Pleas pursuant to R.C. 4112.14. An age-discrimination plaintiff is also permitted to pursue an administrative remedy by filing a charge with the Ohio Civil Rights Commission ("OCRC") under R.C. 4112.05. There are further provisions requiring the plaintiff to elect one among the various remedies provided in these code sections. R.C. 4112.08 states: "[A]ny person filing a charge under division (B)(1) of section 4112.05 of the Revised Code, with respect to the unlawful discriminatory practices complained of, is barred from instituting a civil action under section 4112.14 or division (N) of section 4112.02 of the Revised Code."

{¶ 84} To further complicate matters, there are also federal remedies available, such as administrative relief through the EEOC and judicial relief under the federal Age Discrimination in Employment Act ("ADEA") of 1967. When pursuing federal relief, though, a plaintiff is required to exhaust administrative remedies prior to seeking judicial relief. Section 621, Title 29, U.S.Code. Under Ohio law, seeking relief from the EEOC is treated as seeking administrative relief from the OCRC. See Ohio Adm.Code 4112–3–01(D)(3). Thus, there is a conflict between Ohio and federal procedure in seeking relief for allegations of age discrimination. The majority misses this important fact. Since an EEOC filing is, for all legal purposes, considered to be an OCRC filing under the rules, the majority's arguments that the filing might not have occurred with the Ohio commission are irrelevant. The trial court recognized that the case now under review involves appellant's attempt to pursue a judicial remedy under R.C. 4112.14, even though she had already filed an administrative claim with the OCRC and EEOC. Thus, she would appear to be barred from receiving any judicial relief under R.C. 4112.14. This is the basic conflict that the trial court attempted to resolve.

{¶ 85} A few facts and legal principles were crucial in the trial court's analysis. The court noted that appellant had filed an administrative charge with the EEOC prior to filing her federal complaint under the ADEA. The court recognized that an EEOC filing is a prerequisite to filing a civil suit under the ADEA, as part of the federal requirement that a claimant first exhaust the administrative remedies. The court also noted that Ohio has no such procedural requirement to exhaust administrative remedies. In Ohio, we require the plaintiff to elect at the outset whether to pursue administrative or judicial remedies. The court observed that appellant had not filed any notice with the federal court or the EEOC that the administrative charge was being filed for the sole purpose of protecting her

federal ADEA claim. The court cited case law holding that in Ohio, an age-discrimination plaintiff who desires to pursue both state and federal judicial remedies must either file the state court action first or expressly acknowledge to the EEOC that no investigation is required because the administrative charge is being filed solely to protect the claimant's federal rights. The court was aware that appellant's federal claims were dismissed with prejudice but that her state civil claims attached to the federal lawsuit were dismissed without prejudice. Based on this situation, the court did not find any legal basis for concluding that appellant's state claims filed in Jefferson County in 2005 were preserved by "relating back" to the earlier filing in federal court.

{¶ 86} I believe that the trial court was correct in its analysis and in the law that was cited. My conclusion is based on two further points of disagreement with the majority opinion. The first concerns the date that initiated appellant's administrative remedy in this matter. The parties agree that appellant first initiated a claim in March 2002 with the OCRC and the EEOC without designating that the administrative filing was solely for the purpose of preserving her federal rights. The record contains a copy of the "Charge of Discrimination" filed with the OCRC, signed and dated on March 10, 2002, in the presence of an OCRC representative, which the majority apparently believes to be unimportant. The form also states that the charge should also be filed with the EEOC, and it appears that it was received and filed by the EEOC on October 10, 2002, according to a timestamp on the form. I will refer to this as the OCRC/EEOC charge. Appellant subsequently filed a complaint in federal court in late 2002, which included an Ohio state law claim under R.C. 4112.14. The federal claims were dismissed with prejudice, and the federal court declined to retain jurisdiction over the state claims, which were dismissed without prejudice.

{¶ 87} Appellant did not promptly refile her state claims in Jefferson County, but instead waited 15 months after they had been dismissed by the federal court. Importantly, while her federal claims were dismissed, the OCRC/EEOC charge was never withdrawn or amended. Ohio law clearly requires an election of remedies in age-discrimination cases, and when appellant filed her state claim in 2005, she had already pursued an administrative remedy with the OCRC and the EEOC. Appellant could have filed to withdraw her OCRC/EEOC charge, could have more timely refiled her claims in state court, or could have clarified that she had filed the OCRC/EEOC charge solely to preserve her federal rights. She did none of these things. Therefore, she was barred under the statutory election of remedies from pursuing judicial relief under R.C. 4112.14.

{¶ 88} Some of the procedural events of this case require a closer inspection. Section 1367, Title 28, U.S.Code provided the basis for appellant to file state claims along with her federal claims for age discrimination. This statute estab-

lishes the authority of the federal courts to exert supplemental jurisdiction over state law claims and states:

{¶ 89} "(a) * * * [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

{¶ 90} "* * *

{¶ 91} "(d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

{¶ 92} The statute clearly provides a tolling period of 30 days in those situations in which the state law claims are dismissed by a federal court to allow the plaintiff to refile his or her claims in state court. See Section 1367(d), Title 28, U.S.Code. Appellant's state law claims were dismissed without prejudice from the federal lawsuit on February 2, 2004. However, appellant did not refile her state claim within 30 days. She waited 15 months, May 2005, before filing her complaint in Jefferson County. Appellant has pointed to no rule, statute, or case law that would directly or indirectly extend the 30–day tolling period found in Section 1367(d), Title 28, U.S.Code, and allow her to wait 15 months to refile her state claim. There is some discussion in the record that the doctrine of "relation back" might apply to preserve her claim in state court. The doctrine of "relation back" refers to the application of certain court rules or statutes that specifically allow filings or amended filings to be treated as if they were filed at an earlier time. The term is used in conjunction with Civ.R. 15, which sets forth circumstances in which amended claims may be treated as if they had been filed on the original date of the complaint. Civ.R. 15 also allows the doctrine to apply to newly discovered defendants under certain circumstances. Obviously, none of these occurred in the instant case. Appellant did not amend a complaint or add a party to a complaint. Her federal case was dismissed rather than amended. She filed a totally new complaint in state court 15 months later. Civ.R. 15 has no application to this situation.

{¶ 93} "Relation back" is sometimes discussed in the context of R.C. 2305.19, usually referred to as the "saving statute." Under certain conditions, this application allows claims to be refiled within one year after being dismissed "otherwise than upon the merits," meaning without prejudice. The saving statute as it existed when appellant's federal case was dismissed read as follows:

{¶ 94} "In an action commenced, or attempted to be commenced, if in due time a judgment for the plaintiff is reversed, or if the plaintiff fails otherwise than upon the merits, and the time limited for the commencement of such action at the date of reversal or failure has expired, the plaintiff, or, if he dies and the cause of action survives, his representatives may commence a new action within one year after such date." G.C. 11233.

{¶ 95} The Ohio Supreme Court has held that R.C. 2305.19 applies to preserve state age-discrimination suits under R.C. 4112.02(N) that have been dismissed without prejudice as part of federal discrimination actions, and when the 180–day statute of limitations in R.C. 4112.02(N) has expired. *Osborne v. AK Steel/Armco Steel Co.* (2002), 96 Ohio St.3d 368, 2002-Ohio-4846, 775 N.E.2d 483. In *Osborne*, the 180–day statute of limitations had expired on the state claims during the pendency of the federal lawsuit. When the state claims were dismissed without prejudice, the plaintiff would have been without recourse in state court except for the application of the saving statute. It is in this context that *Osborne* applied former R.C. 2305.19 to allow the plaintiff one year to refile his state age-discrimination claim.

{¶ 96} These legal precedents do not help appellant. She filed her state claim pursuant to R.C. 4112.14, not R.C. 4112.02(N). R.C. 4112.14 does not specifically include a limitations period, but has consistently been held to be subject to the six-year statute of limitations found in R.C. 2305.07, dealing with contracts not in writing. See, e.g., *Ferraro v. B.F. Goodrich Co.*, 149 Ohio App.3d 301, 2002-Ohio-4398, 777 N.E.2d 282, ¶ 32; *Ahern v. Ameritech Corp.* (2000), 137 Ohio App.3d 754, 780, 739 N.E.2d 1184. The six-year statute of limitations had not yet expired when she attempted to file her state court claims in Jefferson County in 2005, because her claims arose out of incidents occurring in 2002. The saving statute as formally written did not apply to situations in which claims were dismissed without prejudice but the statute of limitations had not yet expired on those claims (in contrast to the current saving statute). *Reese v. Ohio State University Hospitals* (1983), 6 Ohio St.3d 162, 6 OBR 221, 451 N.E.2d 1196. In other words, under the old savings statute, if a claim was dismissed without prejudice, and if the statute of limitations had not yet run out, the plaintiff was left to rely on the normal rules of civil procedure and the original statute of limitations. He or she could simply file a claim in state court as a new action within the applicable statute of limitations. There was no need for the claims to "relate back" if the original statute of limitations had not yet expired.

{¶ 97} Thus, in appellant's case, her filing in May 2005 was a new filing because the original statute of limitations had not yet expired. Here is the second area about which I disagree with the majority opinion. The usual rules of procedure dictate that a prior "dismissal without prejudice leaves the parties as if no action

had been brought at all." *DeVille Photography, Inc. v. Bowers* (1959), 169 Ohio St. 267, 272, 8 O.O.2d 281, 159 N.E.2d 443. The majority contends that this rule applies only if the issue at hand is the res judicata effect of a judgment, even though it is a general rule of law cited in many contexts. There is no logical reason, however, to ignore the holding in *DeVille Photography, Inc.* simply because the matter at hand does not involve questions of res judicata. When the federal court dismissed appellant's state law claims, appellant was left in the position, legally speaking, as if she had never filed those claims in the first place. If her May 2005 filing effectively nullifies the prior filing in federal court, then the only prior action that remained pending was her OCRC/EEOC charge from 2002. Again, the record does not indicate that appellant had withdrawn the OCRC/EEOC charge or amended it in any way prior to filing her state claim in 2005. While the majority appears to oversimplify an admittedly complex and confusing procedure, there is no reason from this record to absolve appellant from the effects of her own choices and actions.

{¶ 98} Under Ohio law, the prior filings of an administrative claim bars a plaintiff from pursuing a remedy under R.C. 4112.14, according to the plain language of R.C. 4112.14(B), which states:

{¶ 99} "The remedies available under this section are coexistent with remedies available pursuant to sections 4112.01 to 4112.11 of the Revised Code; except that any person instituting a civil action under this section is, with respect to the practices complained of, thereby barred from instituting a civil action under division (N) of section 4112.02 of the Revised Code or from filing a charge with the Ohio civil rights commission under section 4112.05 of the Revised Code."

{¶ 100} R.C. 4112.05 contains the provisions for seeking administrative relief. Filing a claim with the EEOC counts as seeking an administrative remedy for purposes of R.C. 4112.05(B)(1). See Ohio Adm.Code 4112–3–01(D)(3). Thus, unless some other type of exception applies, appellant filed and pursued her administrative remedy long before she filed and pursued her judicial remedy under R.C. 4112.14 in state court. The law in Ohio is clear that once a plaintiff elects to pursue an administrative remedy for age discrimination, he or she is precluded from pursuing a judicial remedy in state court under R.C. 4112.14. *Balent v. Natl. Revenue Corp.* (1994), 93 Ohio App.3d 419, 424, 638 N.E.2d 1064; *Williams v. Rayle Coal Co.* (Sept. 19, 1997), 7th Dist. No. 96–BA–42, 1997 WL 598091.

{¶ 101} As noted by appellee and the trial court, the only exception that might have applied is that appellant could have informed the OCRC and EEOC that she was filing the administrative claim solely for the purpose of preserving her federal rights. This is a recognized exception to the election-of-remedy rules in age-discrimination cases in Ohio. For example, *Pitts v. Dayton Power & Light*

*Co.* (S.D.Ohio 1989), 748 F.Supp. 527, held that the Ohio Supreme Court in *Morris v. Kaiser Engineers, Inc.* (1984), 14 Ohio St.3d 45, 14 OBR 440, 471 N.E.2d 471, carved out an exception to the election-of-remedies requirement in age-discrimination cases when the plaintiff clearly indicates that he or she is filing an EEOC charge only to satisfy the federal requirements of the ADEA and to preserve federal rights. Other courts have come to the same conclusion. See, e.g., *Borowski v. State Chem. Mfg. Co.* (1994), 97 Ohio App.3d 635, 647 N.E.2d 230; *Talbott v. Anthem Blue Cross & Blue Shield* (S.D.Ohio, 2001), 147 F.Supp.2d 860; *McNeely v. Ross Correctional Inst.,* 10th Dist. No. 06AP–280, 2006-Ohio-5414, 2006 WL 2949014.

{¶ 102} It is clear from the record that appellant did not make such a designation when she filed her OCRC/EEOC charge. She did not express this in her original OCRC/EEOC filing, and there is no indication that she amended or withdrew her administrative charge of discrimination at any time in this litigation. Thus, the trial court was left to follow the strict statutory requirements dealing with the election of remedies in age-discrimination cases, and it subsequently granted summary judgment to appellee.

{¶ 103} This is obviously a harsh outcome for what appears to be a seemingly trivial procedural omission. Yet, this is the way Ohio's age-discrimination statutes are written and how they have been strictly applied for many years. While it is possible that the outcome would be different if appellant had refiled her state claims within 30 days of their dismissal from federal court, or if she had attempted to withdraw her OCRC/EEOC charge, or if she had at least clarified her position to the EEOC at some point, she did none of these things. Thus, I see no reason why the established law regarding the election of remedies, strict as it is, should not be applied. For all the aforementioned reasons, I agree with the trial court's decision that appellant was barred from pursuing her state-law action under R.C. 4112.14 due to her prior election of an administrative remedy.

{¶ 104} Again, the trial court relied on this issue in its decision, and we are not free to give short shrift to his decision on appeal. While I feel it is imperative to address the election-of-remedies issue, I do agree with the majority that there is an additional basis for affirming the trial court judgment, in that appellant did not actually provide evidence to support her age-discrimination claim under R.C. 4112.14. I believe, however, that this reasoning must be more fully addressed in order to be understandable.

{¶ 105} Appellant was initially required to establish a prima facie case for age discrimination under R.C. 4112.14, as set forth in the following four-part test:

{¶ 106} "1. Absent direct evidence of age discrimination, in order to establish a prima facie case of a violation of R.C. 4112.14(A) in an employment discharge action, a plaintiff-employee must demonstrate that he or she (1) was a member of

the statutorily protected class, (2) was discharged, (3) was qualified for the position, and (4) was replaced by, or the discharge permitted the retention of, a person of substantially younger age." *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723, 803 N.E.2d 781, paragraph one of the syllabus.

{¶ 107} Once the plaintiff provides some evidence of these elements, the burden shifts to the defendant to set forth a legitimate, nondiscriminatory reason for the plaintiff's discharge. *Mauzy v. Kelly Servs., Inc.* (1996), 75 Ohio St.3d 578, 582, 664 N.E.2d 1272; *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. The burden then shifts back to the plaintiff to show that the rationale given by the defendant was only a pretext for unlawful discrimination. *Mauzy*, 75 Ohio St.3d at 582, 664 N.E.2d 1272. The plaintiff may establish pretext by showing that "(1) there was no basis in fact for the justification given, (2) the justification did not actually motivate the discharge, or (3) the justification was insufficient to motivate the discharge." *Basinger v. Pilarczyk* (2000), 137 Ohio App.3d 325, 328–329, 738 N.E.2d 814. The plaintiff is required to affirmatively show, even in summary judgment proceedings, that there is a material evidentiary dispute concerning whether the employer's stated justification for the firing was merely a pretext. *Conway v. Paisley House*, 7th Dist. No. 02CA135, 2003-Ohio-4609, 2003 WL 22038192, ¶ 24. I agree with the majority that appellant has failed to establish any genuine issue of material fact in dispute concerning whether Judge Bruzzese's stated reasons for firing her are pretextual. Appellant was required to set forth facts directly related to the defendant's stated justification for the firing, and she did not. "The plaintiff's burden is to prove that the employer's reason was false and that discrimination was the real reason for the discharge." Id. Without some type of evidentiary dispute about the specific reasons proffered as the basis for firing appellant, it is appropriate to grant summary judgment to appellee. Appellant offered no evidence to dispute the evidence offered by appellee. Despite her apparent belief to the contrary, her mere opinion of his evidence and its credibility is not adequate to meet her burden. Therefore, while I concur with the majority that the judgment of the trial court should be affirmed, I partially disagree as to the reason for which we must affirm.