CAMP ST. MARY'S ASSOCIATION OF THE WEST OHIO CONFERENCE
OF THE UNITED METHODIST CHURCH, INC., Appellant,

v.

OTTERBEIN HOMES et al., Appellees.

[Cite as *Camp St. Mary's Assn. of W. Ohio Conference of the United Methodist
Church, Inc. v. Otterbein Homes*, 176 Ohio App.3d 54, 2008-Ohio-1490.]

Court of Appeals of Ohio,
Third District, Auglaize County.

No. 2–06–40.

Decided March 31, 2008.

58

Stephen D. Jones and Kent D. Stuckey, for appellant.

David C. Greer and Gretchen M. Treherne, for appellees.

WILLAMOWSKI, Judge.

{¶ 1} The plaintiff-appellant, The Camp St. Mary's Association of the West Ohio Conference of the United Methodist Church, Inc., appeals the judgment of the Auglaize County Common Pleas Court granting summary judgment in favor of the defendant-appellant, Otterbein Homes. For the reasons stated herein, the judgment of the trial court is affirmed in part and reversed in part.

### STATEMENT OF THE FACTS

{¶ 2} Otterbein Homes is a nonprofit corporation, which was formed in 1912, and is related to the United Methodist Church. Otterbein Homes currently operates a retirement and private living community on real property, which was formerly known as Camp St. Mary's and which was founded in 1946 by the United Brethren Church. After several mergers, the United Brethren Church became part of the United Methodist Church.

{¶ 3} When the United Brethren Church purchased the land that became Camp St. Mary's, several private homes were located on the property. So that

the owners of the private homes would be able to remain in their homes, the church issued 99–year leases to the homeowners. Under these agreements, the church owned the land, but the structures on the land were considered the personal property of the lessees, who paid nominal rental payments to the church. Over the years, additional private residences were built on the property, and the church continued its practice of issuing 99–year leases to the people who built the new structures.

{¶ 4} In 1978, the church sold Camp St. Mary's to the Camp St. Mary's Association. Approximately one year after its purchase, the association became interested in starting a retirement community on the property. This idea continued to be discussed until 1984, when the association approached Otterbein Homes to take over the property. On July 26, 1985, the association transferred the real property known as Camp St. Mary's to Otterbein Homes in fee simple absolute and also transferred $83,000 as part of the transaction. Otterbein Homes has developed an apparently successful retirement community on the property, and approximately 34 of the private structures are still subject to lease agreements.

{¶ 5} During the time the church and the association owned Camp St. Mary's, they allowed lessees to transfer privately owned homes to new purchasers. When a transfer of a private residence was made, the church or the association would issue a new 99–year lease to the new buyer/lessee. For example, if a lessee leased the property for 15 years of the 99–year lease and then opted to sell the home, the lessee could sell the structure to a new buyer. The new buyer would then enter into a new 99–year lease agreement with the then owner of the real property known as Camp St. Mary's, even though there were 84 years remaining on the first lease.

{¶ 6} Otterbein Homes continued the practice of offering new 99–year leases to new buyers until 2004. Then, Otterbein Homes put into effect a new lease policy. In part, the new policy stated that if a lessee wished to terminate a lease prior to the expiration of the 99–year term, he had two options: one option was to sell the structure to Otterbein Homes under one of two specified payment plans, and the second option was to sell the property to a third party.[1] However, if the lessee opted to sell to a third party, Otterbein Homes would no longer offer 99–year leases; instead, any new lease agreement would be available for only 25 years.

1. Assignability does not seem to be at issue here. Based on the terms of only several leaseholders' contracts, which were submitted in support of Otterbein Homes' second motion for summary judgment, the lessee had to obtain the lessor's permission before he or she could assign the lease. The continuation, or the discontinuation, of the association's practice of entering into new leases, and Otterbein Homes' eventual change in the lease policy is the issue before us.

At the end of the 25–year lease, the structure would belong to Otterbein Homes, and the lessee would not be entitled to compensation for the structure.

## STATEMENT OF THE CASE

{¶ 7} Because of Otterbein Homes' change in policy, the association filed a complaint in the Auglaize County Common Pleas Court on November 18, 2005. The complaint stated one claim on each of the following causes of action: fraud, breach of contract, promissory estoppel, breach of constructive trust, a violation of the civil RICO statute, conspiracy to violate the civil Racketeer Influenced and Corrupt Organizations ("RICO") statute, breach of fiduciary duty, negligent misrepresentation, constructive fraud, corporate mismanagement, unjust enrichment, and rescission. On December 23, 2005, Otterbein Homes filed a motion for summary judgment, arguing that the association was not a real party in interest and did not have standing to pursue the allegations set forth in its complaint. The association filed a memorandum in opposition, and on January 25, 2006, the trial court granted partial summary judgment to Otterbein Homes on the claims for promissory estoppel, negligent misrepresentation, corporate mismanagement, and rescission.

{¶ 8} Otterbein Homes filed its answer on February 8, 2006, and on July 31, 2006, it filed a second motion for summary judgment. The association filed a memorandum in opposition, and on October 13, 2006, the trial court granted summary judgment on each of the remaining claims in favor of Otterbein Homes. The association, having appealed the trial court's judgments granting summary judgment, asserts two assignments of error for our review.

### First Assignment of Error

The trial court erred in awarding partial summary judgment in its order dismissing promissory estoppel, negligent misrepresentation and rescission claims.

### Second Assignment of Error

The trial court erred in awarding summary judgment in its order dismissing fraudulent inducement, constructive fraud, contract, fiduciary duty, unjust enrichment and constructive trust claims.

## STANDARD OF REVIEW

{¶ 9} An appellate court reviews a grant of summary judgment de novo, independently and without deference to the trial court's decision. *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, at ¶ 5, citing *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833

N.E.2d 712, at ¶ 8. "A grant of summary judgment will be affirmed only when the requirements of Civ.R. 56(C) are met." *Adkins v. Chief Supermarket*, 3d Dist. No. 11–06–07, 2007-Ohio-772, 2007 WL 567441, at ¶ 7. The party moving for summary judgment must establish (1) that there are no genuine issues of material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Id., citing Civ.R. 56(C); *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. In ruling on a motion for summary judgment, a court may not "weigh evidence or choose among reasonable inferences * * *." *Adkins*, 2007-Ohio-772, 2007 WL 567441, at ¶ 8, citing *Jacobs v. Racevskis* (1995), 105 Ohio App.3d 1, 7, 663 N.E.2d 653. Rather, the court must consider the above standard while construing all evidence in favor of the nonmovant. *Jacobs* at 7, 663 N.E.2d 653.

{¶ 10} The party moving for summary judgment must identify the basis of the motion to allow the nonmovant a "meaningful opportunity to respond." *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 116, 526 N.E.2d 798. In its motion, the moving party "must state specifically which areas of the opponent's claim raise no genuine issue of material fact" and must support its assertion with affidavits or other evidence as allowed by Civ.R. 56(C). Id. at 115, 526 N.E.2d 798, citing *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46, citing *Hamlin v. McAlpin Co.* (1964), 175 Ohio St. 517, 519–520, 26 O.O.2d 206, 196 N.E.2d 781; *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. If the moving party fails to meet its burden, summary judgment is inappropriate; however, if the moving party meets its initial burden, the nonmoving party has a "reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial." *Dresher*, 75 Ohio St.3d at 293, 662 N.E.2d 264.

### Issues Presented in the First Motion for Summary Judgment

{¶ 11} In its first motion for summary judgment, Otterbein Homes argued that the association was not a real party in interest because it suffered no injury in fact. Otterbein Homes stated that the real parties in interest would be the individual leaseholders who may have been negatively affected by its new policies. Otterbein Homes also argued that the deed transferring Camp St. Mary's to it did not contain any conditions and that the association had failed to preserve the right of re-entry because the deed did not contain any such provision. Attached to the motion was the affidavit of Marlen Yost.

{¶ 12} In response, the association claimed it had suffered an injury in fact and therefore, it had standing to represent its members in bringing their claims against Otterbein Homes. Attached to the association's memorandum in opposition was the affidavit of Paul E. Stuckey, and attached to the affidavit were five exhibits—specifically, copies of three letters, a copy of the deed conveying Camp St. Mary's from the association to Otterbein Homes, and a copy of Otterbein Homes' "Leasehold Transfer Policy."

### The Association's Standing as an Individual

{¶ 13} In any litigation, the plaintiff must have standing. "The requirement of standing ensures that the party challenging an order has a 'personal stake in the outcome of the controversy.'" *Ahrns v. SBA Communications Corp.*, 3d Dist. No. 2–01–13, 2001 WL 1167240, at \*2, quoting *Middletown v. Ferguson* (1986) 25 Ohio St.3d 71, 75, 495 N.E.2d 380. To have standing, the plaintiff must "demonstrate an *injury in fact*, which requires a showing that the party has suffered or will suffer a specific injury." (Emphasis sic.) Id., citing *In re Estate of York* (1999), 133 Ohio App.3d 234, 241, 727 N.E.2d 607, citing *Eng. Technicians Assn. v. Ohio Dept. of Transp.* (1991), 72 Ohio App.3d 106, 110–111, 593 N.E.2d 472. "Furthermore, the injury must be traceable to the challenged action, and the injury must likely be redressed by a favorable decision." Id., citing *Eng. Technicians.* Therefore, we must examine each of the association's claims to determine whether it has standing.

{¶ 14} In count one of its complaint, the association brought a claim for actual fraud. To prove fraud, a plaintiff must show the following:

"(a) [A] representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance."

*State ex rel. Illum. Co. v. Cuyahoga Cty. Court of Common Pleas*, 97 Ohio St.3d 69, 2002-Ohio-5312, 776 N.E.2d 92, at ¶ 24, quoting *Russ v. TRW, Inc.* (1991), 59 Ohio St.3d 42, 49, 570 N.E.2d 1076; *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101, paragraph two of the syllabus. The association's claim of fraud is based on Otterbein Homes' representations that it would continue the policies used by the church and the association at the time Camp St. Mary's and the $83,000 in cash were transferred. Should the association prove fraud, the concrete injury suffered will have been the loss of approxi-

mately 83 acres of land plus $83,000. Therefore, the association has standing to bring a claim for actual fraud.

{¶ 15} In the second claim of its complaint, the association asserted breach of contract. However, from the face of the complaint, it is not clear whether the association is asserting the claim on its own behalf or on behalf of the individual leaseholders. In its memorandum in opposition to Otterbein Homes' motion for summary judgment, the association admitted that Camp St. Mary's and $83,000 were given to Otterbein Homes as a gift. Because the property and money were indisputably given as a gift, there is no contract on which to sue, and the association cannot show that it has sustained an injury in fact. *Varee v. Holzinger*, 11th Dist. No. 2006–A–0072, 2007-Ohio-1924, 2007 WL 1175838, at ¶ 22, citing *Carlisle v. T R Excavating* (1997), 123 Ohio App.3d 277, 283, 704 N.E.2d 39. Therefore, the association does not have standing to claim breach of contract on its own behalf, and Otterbein Homes is entitled to summary judgment in that respect. However, if the association has brought the breach-of-contract claim on behalf of the individual leaseholders, claiming breach of the individual lease agreements, we must examine whether it has standing to do so. For ease of analysis, we elect to address this issue when we consider the associations standing to represent its members.

{¶ 16} The association's third claim was for promissory estoppel. To prove promissory estoppel, a plaintiff must show "1) a clear and unambiguous promise; 2) reliance on the promise; 3) the reliance is reasonable and foreseeable; and 4) the party relying on the promise was injured by his or her reliance." *Dunn v. Bruzzese*, 172 Ohio App.3d 320, 2007-Ohio-3500, 874 N.E.2d 1221, at ¶ 21 citing *Patrick v. Painesville Commercial Properties, Inc.* (1997), 123 Ohio App.3d 575, 583, 704 N.E.2d 1249. See also *Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, 852 N.E.2d 716, at ¶ 23–24. As with the association's claim for fraud, this claim arises from the representations made by Otterbein Homes when the association made its gift or real estate and money. On the issue of promissory estoppel, the trial court held that the association had made "no showing * * * to any manner in which it has standing to bring such actions against the defendant." However, the association did do so. It alleged that Otterbein Homes had promised to retain the policies that the church and the association had used for many years, and it produced letters, which it claimed supported its allegation. The association also alleged that it had relied on Otterbein Homes' representations, and as a result thereof, it made a gift of land and money. The association contends that its reliance is reasonable and foreseeable due to the religious affiliations of both parties. Therefore, if the association can prove its claim, it has suffered damages for the property and cash it

transferred to Otterbein Homes. Therefore, the association has standing to bring this claim.

{¶ 17} The fourth claim in the association's complaint is for breach of constructive trust.

> A constructive trust is, in the main, an appropriate remedy against unjust enrichment. This type of trust is usually invoked when property has been acquired by fraud. However, a constructive trust may also be imposed where it is against the principles of equity that the property be retained by a certain person even though the property was acquired without fraud.

*Patterson v. Patterson*, 3d Dist. No. 17–04–07, 2005-Ohio-2254, 2005 WL 1074809, at ¶ 38, quoting *Ferguson v. Owens* (1984), 9 Ohio St.3d 223, 226, 9 OBR 565, 459 N.E.2d 1293; see also *Lawrence v. Bailey* (Jan. 25, 2000), 3d Dist. No. 9–99–37, 2000 WL 51803. Based on this definition, a constructive trust is an equitable remedy that arises by operation of law after there has been a finding of fraud or unjust enrichment. See *Columbus Homes, Ltd. v. S.A.R. Constr. Co.*, 10th Dist. Nos. 06AP–759 and 06AP–760, 2007-Ohio-1702, 2007 WL 1083254, citing *Groza–Vance v. Vance*, 162 Ohio App.3d 510, 2005-Ohio-3815, 834 N.E.2d 15. Therefore, this remedy, designated herein as a claim, is wholly dependent on whether a finding of fraud or unjust enrichment is made. Having standing to bring a claim for actual fraud, the association has standing to seek this remedy.

{¶ 18} The association did not appeal the trial court's rulings on its claims concerning the civil RICO statute. Likewise, the association did not raise on appeal the trial court's orders on its tenth claim, corporate mismanagement. Therefore, we will not consider the fifth, sixth, or tenth claims asserted in the association's complaint.

{¶ 19} In the seventh claim, the association alleged breach of fiduciary duty. "The elements for a breach of fiduciary duty claim are: '(1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom.'" (Citations omitted.) *Thomas v. Fletcher*, 3d Dist. No. 17–05–31, 2006-Ohio-6685, 2006 WL 3702699, at ¶ 13, quoting *Werthmann v. DONet*, 2d Dist. No. 20814, 2005-Ohio-3185, 2005 WL 1490372, at ¶ 42. See also *Strock v. Pressnell* (1988), 38 Ohio St.3d 207, 216, 527 N.E.2d 1235. "A fiduciary has been defined as a person having a duty, created by his or her undertaking, to act primarily for the benefit of another in matters connected with such undertaking." *All Star Land Title Agency, Inc. v. Surewin Invest., Inc.*, 8th Dist. No. 87569, 2006-Ohio-5729, 2006 WL 3095701, at ¶ 36, citing *Strock* at 216, 527 N.E.2d 1235. "A claim of breach of fiduciary duty is basically a claim for negligence that involves a higher standard of care." Id., citing *Strock*. "In order to recover, one must show the existence of

a duty on the part of the alleged wrongdoer not to subject such person to the injury complained of, a failure to observe such duty, and an injury proximately resulting therefrom." Id., citing *Strock*. Again, this cause of action arises based on the parties' actions when Otterbein Homes allegedly made its representations to the association and the land and money were transferred to Otterbein Homes. Should the association prove its claims, it will have suffered injury, and therefore, it has individual standing to bring a claim for breach of fiduciary duty.

{¶ 20} In the eighth claim, the association stated a cause of action for negligent misrepresentation. To prove negligent misrepresentation, the plaintiff must show that the defendant did the following:

> "In the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

*Rockford Homes, Inc. v. Handel*, 5th Dist. No. 07CA006, 2007-Ohio-2581, 2007 WL 1544711, at ¶ 42–43, quoting *Delman v. Cleveland Hts.* (1989), 41 Ohio St.3d 1, 4, 534 N.E.2d 835. "Further, negligent misrepresentation can only be found where an affirmative false statement is made, not merely where the statements are omitted." Id. at ¶ 44, citing *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.* (1996), 115 Ohio App.3d 137, 149, 684 N.E.2d 1261.

{¶ 21} The trial court held that a claim for negligent misrepresentation is a tort action, which cannot be asserted where an express contract is at issue. As noted above, there was no express contract between Otterbein Homes and the association because the land and money were transferred as a gift. The trial court also held that "[a] plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." The trial court correctly stated the economic-loss rule. See *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 106 Ohio St.3d 412, 2005-Ohio-5409, 835 N.E.2d 701, at ¶ 6. As stated above, the transaction in this case was a gift. Because there are no contract claims on which the association could sue, it may look to tort law for causes of action, such as fraud and negligent misrepresentation. As with fraud, the injury sustained by the association would relate to the transfer of real property and money. The association has standing to bring this cause of action.

{¶ 22} In the ninth claim, the association stated a claim for constructive fraud, which is defined as " 'a breach of a legal or equitable duty, which, irrespective of moral guilt of the fraud feasor, the law declares fraudulent,

because of its tendency to deceive others, to violate public or private confidence, or to injure public interests.' " *Cohen v. Estate of Cohen* (1986), 23 Ohio St.3d 90, 91–92, 23 OBR 218, 491 N.E.2d 698, quoting *Stanley v. Sewell Coal Co.* (1981), 169 W.Va. 72, 76–77, 285 S.E.2d 679; *Jackson v. Julian* (Tex.App.1985), 694 S.W.2d 434; *Security Natl. Bank v. Peters, Writer Christensen, Inc.* (1977), 39 Colo.App. 344, 569 P.2d 875, citing *Bank v. Bd. of Edn. of New York* (1953), 305 N.Y. 119, 111 N.E.2d 238; *In re Arbuckle's Estate* (1950), 98 Cal.App.2d 562, 220 P.2d 950. " 'Constructive fraud does not require proof of fraudulent intent; the law indulges in an assumption of fraud for the protection of valuable social interests based upon an enforced concept of confidence both public and private.' " *Cohen* at 92, 23 OBR 218, 491 N.E.2d 698, quoting *Perlberg v. Perlberg* (1969), 18 Ohio St.2d 55, 58, 47 O.O.2d 167, 247 N.E.2d 306. As with the claim for actual fraud, if the association can prove its case, it will have suffered the loss of its property and money, as its claim for constructive fraud reaches back to the time of the transfer and the representations allegedly made by Otterbein Homes to the association. Therefore, the association has standing to pursue a claim for constructive fraud.

{¶ 23} In the eleventh claim, the association asserts unjust enrichment, and in the twelfth claim, the association asserts rescission. "A claim for unjust enrichment arises out of a contract implied in law, or quasi-contract." *Fisk Alloy Wire, Inc. v. Hemsath*, 6th Dist. No. L–05–1097, 2005-Ohio-7007, 2005 WL 3557392, at ¶ 69, quoting *Hummel v. Hummel* (1938), 133 Ohio St. 520, 525– 528, 11 O.O. 221, 14 N.E.2d 923. " 'Such a contract is not a true contract, but is an "obligation that is created by the law without regard to expressions of assent by either words or acts * * *." ' " *Fisk* at ¶ 69, quoting *Legros v. Tarr* (1989), 44 Ohio St.3d 1, 7–8, 540 N.E.2d 257. "Under this type of contract, civil liability 'arises out of the obligation cast by law upon a person in receipt of benefits which he [or she] is not justly entitled to retain' without compensating the individual who conferred the benefits." Id., quoting *Hummel* at 525, 11 O.O. 221, 14 N.E.2d 923. A plaintiff must establish the following three elements to prove unjust enrichment: " '(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment.' " *Miller v. Keybank Natl. Assn.*, 8th Dist. No. 86327, 2006-Ohio-1725, 2006 WL 871621, at ¶ 43, quoting *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 183, 12 OBR 246, 465 N.E.2d 1298.

{¶ 24} As with the breach-of-contract claim, the record is undisputed that the transfer to Otterbein Homes was a gift. The Eighth District Court of Appeals has held that a gift cannot be the basis of a claim for unjust enrichment. Id., citing *Wendover Rd. Property Owners Assn. v. Kornicks* (1985), 28 Ohio

App.3d 101, 28 OBR 198, 502 N.E.2d 226, at syllabus. Other appellate districts, however, have qualified this statement, holding that an absolute gift bars a claim for unjust enrichment, but a cause of action for unjust enrichment may accrue when the gift was conditional. See generally *Wheeler v. Martin,* 4th Dist. No. 04CA15, 2004-Ohio-6936, 2004 WL 2940890; *Knotts v. Flynn* (Jan. 22, 1998), 5th Dist. No. 97AP060036, 1998 WL 172623. We agree with these courts. The association contends that the gift of Camp St. Mary's and $83,000 to Otterbein Homes was conditioned upon Otterbein Homes' retention of, apparently into perpetuity, the practices adopted by the church and the association in relation to the 99-year leases. Accordingly, the association has standing to pursue a claim for unjust enrichment on its own behalf, as its injury in fact is the loss of real estate and money. As with the claim for breach of contract, whether the association has standing to pursue a claim for unjust enrichment on behalf of its members will be discussed below.

{¶ 25} Rescission is an equitable remedy for breach of contract. *Bell v. Turner,* 172 Ohio App.3d 238, 2007-Ohio-3054, 874 N.E.2d 820, at ¶ 27, citing *Drive–In Assoc., Inc. v. Halpin,* (Dec. 21, 1977), 1st Dist. No. C–76712, 1977 WL 199804. "The primary purpose of rescission is to restore the status quo and to return the parties to the position they would have been in had the contract not been formed." Id. at ¶ 30, citing *Rosepark Properties, Ltd. v. Buess,* 167 Ohio App.3d 366, 2006-Ohio-3109, 855 N.E.2d 140, at ¶ 51. Because there was no contract between the association and Otterbein Homes, the association does not have standing to seek rescission based on breach of contract. However, rescission may also be available as a remedy if a gift was made as the result of fraud. See generally *Cooper v. Smith,* 155 Ohio App.3d 218, 2003-Ohio-6083, 800 N.E.2d 372. Because the association has standing to claim fraud, it also has standing to pursue the remedy of rescission on its own behalf. Whether the association can bring a claim for unjust enrichment and pursue the remedy of rescission on behalf of its members will be discussed below.

### The Association's Standing to Bring Suit on Behalf of its Members

{¶ 26} The association contends that it has standing to bring suit on behalf of its members for injuries sustained as a result of the changes Otterbein Homes made in its new lease policy, which was effective in 2004.

The United States Supreme Court has held that an association has standing on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."

*Ohio Contrs. Assn. v. Bicking* (1994), 71 Ohio St.3d 318, 643 N.E.2d 1088, quoting *Hunt v. Washington State Apple Advertising Comm.* (1977), 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383. As with individual standing, an "association must establish that its members have suffered actual injury." Id., citing *Simon v. E. Kentucky Welfare Rights Org.* (1976), 426 U.S. 26, 40, 96 S.Ct. 1917, 48 L.Ed.2d 450, citing *Warth v. Seldin* (1975), 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343. "To be compensable, the injury must be concrete and not simply abstract or suspected." Id., citing *State ex rel. Consumers League of Ohio v. Ratchford* (1982), 8 Ohio App.3d 420, 424, 457 N.E.2d 878.

{¶ 27} The claims, which were apparently brought on behalf of the association's members, are breach of contract and unjust enrichment. The evidence is undisputed that each leaseholder has a separate lease with Otterbein Homes. These leases are express contracts between the individual leaseholders and Otterbein Homes. Because the leaseholder's rights are governed by individual, express contracts and because any alleged fraud occurred between the association and Otterbein Homes, the individual leaseholders cannot have claims for unjust enrichment. *Cleveland Mack Leasing, Ltd. v. Chef's Classics, Inc.*, 7th Dist. No. 05 MA 59, 2006-Ohio-888, 2006 WL 459269, at ¶ 34, citing *Sammarco v. Anthem Ins. Cos., Inc.* (1998), 131 Ohio App.3d 544, 557, 723 N.E.2d 128 ("[a]bsent fraud or illegality, a party to an express agreement may not bring a claim for unjust enrichment * * *."). Therefore, the association does not have standing to pursue a claim of unjust enrichment on behalf of its members.

{¶ 28} On the breach-of-contract claim, the association argues that Otterbein Homes was obligated to issue new 99–year leases to people who purchase current leaseholders' structures, which are located on Otterbein Homes' real property. The association apparently contends that Otterbein Homes' change in policy concerning the termination and renewal of current leases breaches the individual leaseholders' contracts. In their individual capacities, the leaseholders would have standing to sue Otterbein Homes based on the provisions of their individual rental agreements. There is no dispute in the record that the association was formed to manage Camp St. Mary's and to protect the interests of the private residence owners; thus, this litigation is "germane" to the association's purpose.

{¶ 29} None of the individual contracts were filed with the first motion for summary judgment; however, Otterbein Homes contends that the terms of each lease differed drastically. The association admits that there are slight differences in the terms of the individual lease agreements, but argues that the differences were not so substantial as to impair its standing (that is, by requiring the participation of individual members in the litigation). Consequently, there is a genuine issue of material fact as to whether the individual members are required

to participate in this litigation, and without any of the contracts before us, we are unable to decide this question as a matter of law. Summary judgment on this issue is inappropriate.

{¶ 30} As to the potential remedy of rescission, the association's complaint seeks rescission of its gift of real property and money to Otterbein Homes and not rescission of the leaseholder's individual contracts. Even if the association can show breaches of the individual contracts, it has not sought rescission in that regard. Therefore, summary judgment in favor of Otterbein Homes is appropriate as to the association's representative standing on count twelve of the complaint.

### Conclusions as to the Association's Standing

{¶ 31} For the reasons expressed above, partial summary judgment in favor of Otterbein Homes is appropriate. In its individual capacity, the association does not have standing to bring a claim for breach of contract, and Otterbein Homes is entitled to summary judgment on that issue. However, the association does have standing as an individual to bring claims for fraud, promissory estoppel, breach of constructive trust, breach of fiduciary duty, negligent misrepresentation, constructive fraud, unjust enrichment, and rescission, which renders summary judgment in favor of Otterbein Homes inappropriate.

{¶ 32} In bringing suit on behalf of its members, the association does not have standing to pursue a claim for unjust enrichment, nor does it have to have standing to seek the remedy of rescission. Otterbein Homes is entitled to summary judgment on these issues. Because the record is not clear as to whether the association has standing to pursue a breach-of-contract claim on behalf of its members, Otterbein Homes is not entitled to summary judgment on that issue.

### Issues Presented in the Second Motion for Summary Judgment

### Fraud Asserted by the Association as an Individual

{¶ 33} In its second motion for summary judgment, Otterbein Homes argued that the association cannot prove it committed fraud. First, Otterbein Homes claimed that a finding of fraud may not be based on representations concerning future actions. Otterbein Homes claimed it did not make false statements of fact, as the only promise made in regard to the individual leaseholders was to honor the terms of the individual lease agreements. Otterbein Homes also argued that the association cannot show justifiable reliance upon any of its statements. Otterbein Homes alleged that the association was no longer able to maintain its property, and it had no other option than to get rid of the land. Finally, Otterbein Homes asserted that the statute of limitations bars

the association's claim for fraud. Otterbein Homes contended that there is a four-year statute of limitations on fraud claims, and the association knew or should have known that it was no longer issuing 99–year leases at several different times, all of which occurred more than four years prior to the filing of the association's complaint.

{¶ 34} The association's complaint is based on Otterbein Homes' failure to continue "past practices," including accepting payments from "heirs," the payment of costs and fees, and the issuance of new 99–year leases. With respect to each of these issues, Otterbein Homes argued that the statute of limitations bars the association's claim. R.C. 2305.09 provides a four-year statute of limitations for fraud claims. However, the statute of limitations does not begin to run until the fraud is discovered or should have been discovered. R.C. 2305.09. " 'Information sufficient to alert a reasonable person to the possibility of wrongdoing gives rise to a party's duty to inquire into the matter with due diligence.' " *Alum. Line Prod. Co. v. Brad Smith Roofing Co., Inc.* (1996), 109 Ohio App.3d 246, 671 N.E.2d 1343, quoting *Au Rustproofing Ctr. v. Gulf Oil Corp.* (C.A.6, 1985), 755 F.2d 1231, 1237, citing *Militsky v. Merrill Lynch, Pierce, Fenner, & Smith* (N.D.Ohio 1980), 540 F.Supp. 783, 787. " 'Once sufficient indicia of fraud are shown, a party cannot rely on its unawareness or the efforts of the opposition to lull it into a false security to toll the statute.' " Id., quoting *Au Rustproofing* at 1237, citing *Militsky* at 786–787.

{¶ 35} As stated above, the association's claim for fraud is based on Otterbein Homes' actions that differed from the "lease practices" implemented when the association owned the property. On this record, the first instance in which Otterbein Homes quit using the association's "lease practices" occurred in May 1993. At that time, Otterbein Homes issued a 25–year lease, rather than a 99–year lease, to Robert and Joyce Wolfe. Otterbein Homes entered into another 25–year lease in May 1998. If the association's duty to inquire into Otterbein Homes' leasing practices did not begin in 1993, it certainly began in 1998 after two new leases, which did not reflect the association's "practice" of entering into 99–year leases, had been issued. Because the complaint in this case was not filed until November 2005, the fraud claim was clearly brought outside the four-year statute of limitations and is therefore barred. Otterbein Homes is entitled to summary judgment on the association's claim for fraud.

### Breach of Fiduciary Duty Asserted by the Association as an Individual

{¶ 36} Otterbein Homes contended that it is entitled to judgment on the association's claim of breach of fiduciary duty because it did not owe any fiduciary duty to the association, and therefore, there could have been no breach. Otterbein Homes claimed that no fiduciary duty can be imposed when a gift is

absolute, and in this case, the gift was absolute because there were no restrictions in the deed. Otterbein Homes also claimed that the cause of action is barred by the four-year statute of limitations.

{¶ 37} A "fiduciary" is "'a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking.'" *Groob v. KeyBank*, 108 Ohio St.3d 348, 2006-Ohio-1189, 843 N.E.2d 1170, 843 N.E.2d 1170, at ¶ 16, quoting *Strock*, 38 Ohio St.3d at 216, 527 N.E.2d 1235. A "fiduciary relationship" forms when "'special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.'" Id., quoting *In re Termination of Emp. of Pratt* (1974), 40 Ohio St.2d 107, 115, 69 O.O.2d 512, 321 N.E.2d 603. A fiduciary duty may be created informally if both parties understand that the special trust has been reposed. *Culbertson v. Wigley Title Agency, Inc.* (Feb. 13, 2002), 9th Dist. No. 20659, 2002 WL 219570. Additionally, when the parties are negotiating in an arm's length transaction, there is no fiduciary duty. *Landskroner v. Landskroner*, 154 Ohio App.3d 471, 2003-Ohio-4945, 797 N.E.2d 1002, at ¶ 33.

{¶ 38} The association cannot prove that any fiduciary duty was created by Otterbein Homes' actions. The association admits that it did not retain legal counsel prior to or during the transaction with Otterbein Homes. In a memorandum to the association's members, Otterbein Homes stated its agreement to receive the gift of real property and money from the association. However, Otterbein Homes also indicated that an audit was being conducted to evaluate the "fiscal impact in future years of the various leases." The memorandum also stated that Otterbein Homes had an attorney reviewing all leases to determine the long-term effect on Otterbein Homes if it assumed the leases as written. From this evidence, it is clear that Otterbein Homes was evaluating what effect the transfer would have on its operations.

{¶ 39} The association relies on select words from a letter sent from an agent of Otterbein Homes to the association on February 14, 1985. The letter states:

> The spirit of the acceptance action is to indicate that Otterbein Homes would be in the position to receive Camp St. Mary's as "successors" to both assets and any liabilities, subject to any restrictions in the same manner as the St. Mary's Board now has them. Donor restrictions would carry through in the same sense of TRUST as you now have them. Board designations would carry through with the same power to change as you now have them. Liability regarding leaseholders would carry the same contract provisions. Any losses experienced in this regard would be the concern of Otterbein Homes regardless of the source of funds used to cover them.

The association relies primarily on the word "trust" to show that it was vulnerable to Otterbein Homes' superior position. However, such an interpretation is outside the clear meaning and intent of the letter. Otterbein Homes used the word "trust" to indicate that it would honor restrictions donors had placed on their charitable donations. That is the only meaning to be gleaned from the letter. The letter addresses leaseholders to the extent that Otterbein Homes promised to uphold the terms of the then existing leases. This letter does not create a genuine issue of material fact as to whether the association placed its trust in Otterbein Homes.

{¶ 40} The association has also produced the self-serving affidavit of Paul Stuckey, in which he states that the association placed its trust in Otterbein Homes and that that action created a position of superiority and influence in Otterbein Homes. Stuckey also "opined" that Otterbein Homes agreed to accept the stewardship of Camp St. Mary's, which created fiduciary duties. Stucky was not qualified as a legal expert, and his opinions concerning superiority, influence, and fiduciary duties are legal conclusions rather than statements of fact. Therefore, they cannot be used to create genuine issues of material fact. See generally *Niermeyer v. Cook's Termite & Pest Control, Inc.,* 10th Dist. No. 05AP–21, 2006-Ohio-640, 2006 WL 330099, at ¶ 34, citing Civ.R. 56(E); Evid.R. 705; *Stamper v. Middletown Hosp. Assn.* (1989), 65 Ohio App.3d 65, 69, 582 N.E.2d 1040.

{¶ 41} Furthermore, there is no evidence that Otterbein Homes was acting *primarily* for the benefit of the association. Although there is evidence in the record that the association was operating at a loss and was required to make significant changes to the property by the Environmental Protection Agency, there is no evidence that Otterbein Homes took action solely to alleviate the association's problems. Likewise, although the association may have placed its trust in Otterbein Homes, there is absolutely no evidence indicating that Otterbein Homes, through its own actions, ever acted primarily for the benefit of the association. Although Otterbein Homes and the association both shared the ultimate goal of building a retirement community on the property, the evidence indicates that Otterbein Homes was acting on its own behalf, and the Association simply opted to move forward without the benefit of counsel. As shown above, Otterbein Homes' acceptance of the Association's gift was clearly based, in part, on the results of its consultations with financial experts and legal counsel. While Otterbein Homes' acquisition of the property was a benefit to the Association, Otterbein Homes' primary focus was the creation of a retirement community on the property, and Otterbein Homes was indisputably concerned about the propriety of undertaking such a task. Based on the record in this case, there is no evidence to show that a fiduciary duty was created between Otterbein Homes and

the association. Otterbein Homes is entitled to summary judgment on the association's claim for breach of fiduciary duty.

### Constructive Fraud Asserted by the Association as an Individual

{¶ 42} In the second motion for summary judgment, Otterbein Homes contended that it was entitled to judgment on the association's constructive fraud claim. Otterbein Homes argued that there was no confidential or fiduciary relationship between it and the association. As with the fraud claim, Otterbein Homes claimed that the statute of limitations bars the constructive fraud claim.

{¶ 43} Constructive fraud differs from actual fraud in that actual fraud requires an "affirmative misrepresentation," while constructive fraud "results from the 'failure to disclose facts of a material nature where there exists a duty to speak.'" *Baughman v. State Farm Mut. Auto. Ins. Co.*, 9th Dist. No. 22204, 2005-Ohio-6980, 2005 WL 3556406, at ¶ 12, quoting *Layman v. Binns* (1988), 35 Ohio St.3d 176, 178, 519 N.E.2d 642. Even if we assume that Otterbein Homes had a duty to speak, the association has presented no evidence to demonstrate that Otterbein Homes *failed* to make any representations. The association's complaint is based entirely on the promises Otterbein Homes allegedly did make as far as continuing the "current lease practices" and its alleged subsequent failure to do so. Because there is no evidence in the record showing what Otterbein Homes failed to represent to the association, there are no genuine issues of material fact, and Otterbein Homes is entitled to judgment on the association's claim for constructive fraud.

### Unjust Enrichment Asserted by the Association as an Individual

{¶ 44} As stated above, a plaintiff must establish the following three elements to prove unjust enrichment: "'(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment.'" *Miller v. Keybank Natl. Assn.*, 8th Dist. No. 86327, 2006-Ohio-1725, 2006 WL 871621, at ¶ 43, quoting *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 183, 12 OBR 246, 465 N.E.2d 1298. In its second motion for summary judgment, Otterbein Homes argued that it could not have been unjustly enriched if the property had been a gift. It also argued that any time a gift is made, enrichment is expected, and therefore, the enrichment cannot be unjust.

{¶ 45} The record is undisputed that the association made a gift of Camp St. Mary's to Otterbein Homes. The second element of unjust enrichment is also satisfied—that Otterbein Homes knew it had received the benefit. As to the third element, it has been held that "[u]njust enrichment is inapplicable to gifts or any officious act." *Miller* at ¶ 43, citing *Wendover Rd.*, 28 Ohio App.3d

101, 28 OBR 198, 502 N.E.2d 226, at syllabus. However, other courts have been slightly more specific about the nature of the gift involved and have held that "[t]he issue of unjust enrichment does not arise with absolute gifts because '[e]nrichment of the donee is the intended purpose of a gift.' " *Cooper v. Smith,* 155 Ohio App.3d 218, 2003-Ohio-6083, 800 N.E.2d 372, quoting *Lane v. Saunders* (Dec. 13, 1985), 4th Dist. No. 85CA5, 1985 WL 17472. Generally, "once an inter vivos gift is complete, it is generally absolute and irrevocable." *Cooper* at ¶ 31, citing *Romaniw–Dubas v. Polowyk* (Aug. 10, 2000), 8th Dist. No. 75980, 2000 WL 1144784. "However, a donor may impose conditions on a gift so ·that if the conditions fail, the gift fails." Id., citing *Wilkin v. Wilkin* (1996), 116 Ohio App.3d 315, 318, 688 N.E.2d 27. The absolute or conditional nature of the gift must be resolved by examining the donor's intent, which is determined " 'from any express declaration by the donor at the time of the making of the gift or from the circumstances.' " Id., quoting 38 American Jurisprudence 2d (1999) 767–768, Gifts, Section 72.

{¶ 46} The evidence in the record shows that when the association passed its resolution agreeing to make the gift to Otterbein Homes, the resolution contained no conditions. Additionally, the deed contained no restrictions on Otterbein Homes' use of the gift. Although the association filed the affidavit of Paul Stuckey, in which he stated that the association had made a conditional gift and that the association did not consider the gift unconditional, Stuckey's affidavit is purely self-serving and is unsupported by any other evidence in the record. *Combs v. Spence,* 5th Dist. No. 2006CA0034, 2007-Ohio-2210, 2007 WL 1346590, at ¶ 21, citing *Ohio v. $317.49 in United States Currency,* 5th Dist. No. 2006–CA–00318, 2007-Ohio-475, 2007 WL 333563, at ¶ 30. See also *Church v. Fleishour Homes, Inc.,* 172 Ohio App.3d 205, 2007-Ohio-1806, 874 N.E.2d 795, at ¶ 34, citing *Bhatia v. Johnston* (C.A.5, 1987), 818 F.2d 418, 421–422; *Am. Heritage Life Ins. Co. v. Orr* (C.A.5, 2002), 294 F.3d 702, 710 (self-serving affidavits, unsupported and without corroborating evidentiary materials, are not sufficient to create a genuine issue of material fact on summary judgment).

{¶ 47} Given this record, it is clear that the gift from the association to Otterbein Homes was absolute and irrevocable, and the association is unable to establish that Otterbein Homes was unjustly enriched by its retention of Camp St. Mary's. Having found no genuine issue of material fact, that Otterbein Homes is entitled to judgment as a matter of law, and that reasonable minds could reach only one conclusion, which is adverse to the nonmoving party, the association, summary judgment is appropriate in favor of Otterbein.

### *Breach of Constructive Trust Asserted by the Association as an Individual*

{¶ 48} In its second motion for summary judgment, Otterbein Homes argued that the trial court had no basis for imposing a constructive trust because

it was entitled to summary judgment on the association's claims for fraud, breach of fiduciary duty, and unjust enrichment. By extension, Otterbein Homes alleged that it could not be liable for breaching a constructive trust, because a trust never arose. We agree with Otterbein Homes' contentions.

{¶ 49} We have previously held that a trial court does not err when it refuses to impose a constructive trust if the plaintiff has not proved fraud, undue influence, or breach of fiduciary duty. See *Patterson v. Patterson*, 3d Dist. No. 17–04–07, 2005-Ohio-2254, 2005 WL 1074809, at ¶ 38. Such a principle can also be extended to the plaintiff's failure to prove a claim for unjust enrichment, which as stated above, is a basis for imposing a constructive trust. Having found herein that Otterbein Homes was entitled to summary judgment on the association's claims for fraud, breach of fiduciary duty, and unjust enrichment, Otterbein Homes is also entitled to judgment on the association's claim for breach of constructive trust.

### *Breach of Contract Asserted by the Association on Behalf of its Members*

{¶ 50} In its second motion for summary judgment, Otterbein Homes argued it did not believe a "contract" existed between it and the association, but if such a contract did exist, any claims thereon would be barred by the statute of limitations. Otterbein Homes alleged that the applicable statute of limitations is six years pursuant to R.C. 2305.17. Otterbein Homes claimed that similar to the fraud claim, any breach of the alleged contract should have been discovered at the time the deed was executed, or in 1987, when the leaseholders received Otterbein Homes' new financial policy, or at the very latest in October 1999 when a person unrelated to a still-living leaseholder attempted to take possession of a leasehold as an "heir." Although some of these arguments raised by Otterbein Homes actually address the terms of the individual leaseholds, they were raised on the issue of whether Otterbein Homes breached the "contract" it entered into with the association for the transfer of Camp St. Mary's.

{¶ 51} As held above, the breach of contract claim based on the gift of Camp St. Mary's to Otterbein Homes is moot because the association does not have standing to bring that claim as an individual. Since Otterbein Homes did not address the association's claims concerning Otterbein Homes' alleged breach of the individual leases in its motion for summary judgment, the trial court could not, and this court cannot now, determine the issue. See *Kellie Auto Sales, Inc. v. Rahbars & Ritters Ents. L.L.C.*, 172 Ohio App.3d 675, 2007-Ohio-4312, 876 N.E.2d 1014, at ¶ 34, citing *Mitseff*, 38 Ohio St.3d 112, 526 N.E.2d 798, at syllabus; *Marshall v. Aaron* (1984), 15 Ohio St.3d 48, 472 N.E.2d 335, at syllabus; *Bowen v. Kil–Kare, Inc.* (1992), 63 Ohio St.3d 84, 94, 585 N.E.2d 384. At this time, Otterbein Homes is not entitled to judgment as a matter of law on the claim

for breach of contract brought by the association on behalf of its members, and those issues are remanded to the trial court.

### Promissory Estoppel, Negligent Misrepresentation, and Rescission Claims by the Association as an Individual

{¶ 52} As a further matter, we note that the second motion for summary judgment did not address the association's claims for promissory estoppel, negligent misrepresentation, or rescission because those claims were disposed of by the trial court on the first motion for summary judgment. Because those issues have been resolved inconsistently with the trial court's judgment, they must be remanded to the trial court for additional proceedings. We may not create counsels' strategy on these issues, nor may we create legal arguments on behalf of either party in anticipation of a potential motion for summary judgment. See *Kellie Auto Sales* at ¶ 34, citing *Mitseff* at syllabus; *Marshall* at syllabus; *Bowen* at 94, 585 N.E.2d 384.

### Conclusion on Otterbein Homes' Second Motion for Summary Judgment

{¶ 53} Having found no genuine issues of material fact, that Otterbein Homes is entitled to judgment as a matter of law, and that reasonable minds can come to no other conclusion, Otterbein Homes is entitled to summary judgment on the association's claims for fraud, constructive fraud, breach of fiduciary duty, unjust enrichment, and breach of constructive trust. Since Otterbein Homes' second motion for summary judgment did not address the association's claims brought on its own behalf for promissory estoppel, negligent misrepresentation, or rescission, those issues are remanded to the trial court for further proceedings. Likewise, Otterbein Homes' second motion for summary judgment did not address the breach-of-contract claim that the association attempted to bring on behalf of its members. That matter must likewise be remanded to the trial court.

{¶ 54} Consistent with the opinion of this court, the judgment of Auglaize County Common Pleas Court is affirmed in part and reversed in part. This matter is remanded to the trial court for further proceedings.

Judgment affirmed in part
and reversed in part,
and cause remanded.

PRESTON, J., concurs.

ROGERS, J., concurs in part and dissents in part.

ROGERS, J., concurring in part and dissenting in part.

{¶ 55} I concur with the majority in holding that the claims of the appellant should be dismissed as to fraud and breach of fiduciary duty. However, I would hold that all other issues raised by the appellant are precluded by the doctrine of "merger by deed." Accordingly, there remain no issues to be litigated, and I would affirm the trial court's dismissal of the appellant's action.