[Cite as *Trehar v. Brightway Ctr.*, 2015-Ohio-4144.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| JENNIFER TREHAR, | ) | |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | CASE NO. 14 JE 20 |
| V. | ) | |
| | ) | OPINION |
| BRIGHTWAY CENTER, INC., | ) | |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS:   Civil Appeal from Court of Common Pleas of Jefferson County, Ohio Case No. 12CV605

JUDGMENT:   Reversed and Remanded

APPEARANCES:
For Plaintiff-Appellant   Attorney Ira J. Mirkin
Attorney Charles W. Oldfield
City Centre One, Suite 800
100 Federal Plaza East
Youngstown, Ohio 44503

For Defendant-Appellee   Attorney David J. Scarpone
Attorney Kristopher M. Haught
2021 Sunset Boulevard
Steubenville, Ohio 43952

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Carol Ann Robb

Dated: October 2, 2015

[Cite as *Trehar v. Brightway Ctr.*, 2015-Ohio-4144.]
DONOFRIO, P.J.

{¶1} Plaintiff-appellant, Jennifer Trehar, appeals from a Jefferson County Common Pleas Court judgment granting summary judgment in favor of defendant-appellee, Brightway Center, Inc., on Trehar's complaint for promissory estoppel.

{¶2} Brightway is a nonprofit corporation whose goal is to build a Christian youth sports camp. Daryle Griffin is the president and CEO of Brightway.

{¶3} Brightway hired Trehar in September 2009, as a freelancer doing promotional work. In May 2010, Brightway hired Trehar as a full-time employee at a salary of $50,000. Her job duties included writing grant proposals, updating the web site, designing the newsletter, designing brochures and fliers, planning events, attending meetings with Griffin, and attending various functions.

{¶4} In the spring of 2012, Trehar and her boyfriend decided to move in together. According to Trehar, she informed Griffin of her planned move in mid-May 2012, and Griffin congratulated her. Also according to Trehar, she and Griffin again discussed her move on June 1, and June 8, 2012. During the June 8 discussion, Trehar states, Griffin approved her not attending a work function so that she could help her boyfriend with moving into their new home.

{¶5} On June 19, 2012, Trehar, Griffin, and Cathy Takach, another Brightway employee, attended a lunch together. During the lunch, the subject of Trehar's new home came up. Griffin claims this was the first he heard of Trehar moving in with her boyfriend.

{¶6} In a letter dated July 13, 2012, Brightway's board of directors informed Trehar:

> [G]iven that Brightway is a Christian organization at its very core, we must hold ourselves and our employees to the highest ethical standards. Our concern, as you are well aware, is how your living arrangement will be perceived by those whom we hope to impact, as well as those from whom we seek support. We simply cannot reconcile our affections and appreciation for you with our belief that living together outside marriage is forbidden by the Scriptures.

Accordingly, we have opted to suspend you for the month of July. We will, however, continue to pay your salary and health insurance on schedule. The suspension will allow you time to decide, if you have not already done so, whether to remain where you are living or to make other arrangements.

Should you choose to remain in your current living arrangements, your employment with Brightway would be terminated, effective July 31, 2012. * * * Should you choose to move out or marry your employment would resume on August 1, 2012.

(Trehar Dep. Ex. C).

{¶7} Trehar did not change her living arrangement. Consequently, Brightway fired her on July 31, 2012.

{¶8} Trehar filed a complaint against Brightway asserting a claim for promissory estoppel. She asserted that Brightway, through Griffin's actions and words, represented to her that she would not be fired for moving in with her boyfriend and she relied on his representations to her detriment. Brightway filed a counterclaim for conversion.

{¶9} Brightway then filed a motion for summary judgment on Trehar's complaint asserting there was no evidence that it made any specific promises of job security or continued employment and, therefore, Trehar's claim must fail. Trehar filed a response arguing there was a genuine issue of material fact as to whether Brightway knew and approved of Trehar's living arrangement.

{¶10} The trial court held a hearing on Brightway's motion. During the hearing, Brightway brought up this court's decision in *Dunn v. Bruzzese Jr.*, 172 Ohio App.3d 320, 2007-Ohio-3500, 874 N.E.2d 1221 (7th Dist.), which the trial court stated it had not read. At the conclusion of the hearing, the trial court stated there was a genuine issue of material fact as to whether there was a promise of continued employment. Therefore, the court stated it was going to overrule the summary judgment motion.

{¶11} Two days later, however, the trial court issued its judgment entry which granted Brightway's summary judgment motion. The court relied on *Dunn*, 172 Ohio App.3d 320. The court noted that Trehar was an employee at-will. It reasoned that Trehar did not allege any statements by Brightway that amounted to a clear and unambiguous promise of continued employment. Therefore, it found she could not meet the elements required for promissory estoppel. After the court granted its motion for summary judgment, Brightway dismissed its counterclaim.

{¶12} Trehar filed a timely notice of appeal on May 27, 2014.

{¶13} Trehar now raises a single assignment of error, which states:

THE TRIAL COURT ERRED WHEN IT GRANTED BRIGHTWAY CENTER, INC.'S MOTION FOR SUMMARY JUDGMENT.

{¶14} Trehar argues she presented evidence that Brightway represented to her that she could move in with her boyfriend and then fired her when she relied on those representations and did so. She claims she was not required to show an explicit promise in order to establish a promissory estoppel claim. She asserts even silence on the part of an employer can suffice. Trehar points to evidence that Griffin did not tell her she would be fired for moving in with her boyfriend, he congratulated her on her move, and he granted her request for time off to help her boyfriend move into their new home. These facts, when viewed in the light most favorable to her, Trehar argues create a genuine issue of material fact as to whether Brightway was estopped from firing Trehar for moving in with her boyfriend.

{¶15} In reviewing a trial court's decision on a summary judgment motion, appellate courts apply a de novo standard of review. *Cole v. Am. Industries & Resources Corp.*, 128 Ohio App.3d 546, 552, 715 N.E.2d 1179 (7th Dist.1998). Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only

conclude that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Flemming*, 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 (1994). A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**{¶16}** Ohio is an employment at-will state. *Dohme v. Eurand Am., Inc.*, 130 Ohio St. 3d 168, 2011-Ohio-4609, 956 N.E.2d 825, ¶11. Either party to an employment-at-will agreement may terminate the employment relationship for any reason that is not contrary to law. *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 483 N.E.2d 150 (1985). Stated another way, an employee can be terminated for good cause, bad cause, or no cause at all. *Phung v. Waste Mgt., Inc.*, 23 Ohio St.3d 100, 491 N.E.2d 1114 (1986).

**{¶17}** Promissory estoppel is an exception to the employment at-will doctrine. *Mers*, at paragraph three of the syllabus. The elements necessary for a promissory estoppel claim are (1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the party to whom the promise is made, and (3) injury by the reliance by the party claiming estoppel. *Landpor Contrs., Inc. v. C&D Disposal Tech. L.L.C.*, 7th Dist. No. 11-JE-28, 2013-Ohio-1436, ¶34.

**{¶18}** "A clear and unambiguous promise is one that the promisor would expect to induce reliance." *Ringhand v. Chaney*, 12th Dist. Nos. CA2013-09-072, CA2013-09-076 2014-Ohio-3661, ¶20, citing *McCroskey v. State*, 8 Ohio St.3d 29, 30, 456 N.E.2d 1204 (1983). Praise with respect to job performance and discussion of future career development, without more, will not modify an employment-at-will relationship. *Helmick v. Cincinnati Word Processing, Inc.*, 45 Ohio St. 3d 131, 543 N.E.2d 1212 (1989), paragraph three of the syllabus. Instead, the claimant must demonstrate detrimental reliance on specific promises of job security. *Id.* Moreover, a promise of future benefits or opportunities without a specific promise of continued employment is not enough to support a claim for promissory estoppel. *Wing v.*

*Anchor Media, Ltd. of Texas*, 59 Ohio St. 3d 108, 110-111, 570 N.E.2d 1095 (1991).

**{¶19}** According to Trehar, she first told Griffin of her plans to move in with her boyfriend on May 17, 2012. (Trehar Dep. 33). Trehar stated that when she told Griffin of her plans, he congratulated her on her upcoming move. (Answer to Interrogatory 8). Griffin asked her if she was telling people, and Trehar responded that she had not planned a big announcement. (Answer to Interrogatory 8). Griffin told Trehar he would respect her privacy. (Answer to Interrogatory 8).

**{¶20}** Trehar stated that she again discussed her move with Griffin on June 1, 2012, when she told him she and her boyfriend were going to begin moving furniture into their home that evening. (Answer to Interrogatory 8).

**{¶21}** The next time the move came up, Trehar stated, was on June 8, 2012, when Griffin approved Trehar not attending a work-related event the following day so that she could assist her boyfriend in moving into their new home. (Answer to Interrogatory 8).

**{¶22}** Brightway, on the other hand, asserts it had no knowledge that Trehar had moved in with her boyfriend until June 19, 2012. (Griffin Dep. Vol. I, 24). Griffin stated he was at a lunch meeting with Trehar and Cathy Takach. (Griffin Dep. Vol. I, 24). Trehar and Takach were discussing the living arrangements with Trehar's boyfriend and his children and it then hit him "like a ton of bricks" that Trehar had moved in with her boyfriend. (Griffin Dep. Vol. I, 24). Griffin stated that he had no knowledge of Trehar's move prior to that day. (Griffin Dep. Vol. I, 29). He stated that Trehar had mentioned that her boyfriend was moving but he did not know she was moving in with him. (Griffin Dep. Vol. I, 34).

**{¶23}** The evidence demonstrated, however, that on May 29, 2012, Trehar sent an email to several people, including Griffin, referencing her "moving this weekend." (Trehar Dep. 29, Ex. B). And on June 2, 2012, Trehar sent an email to Griffin where she told him "I'm moving tomorrow and have been moving stuff every night this week." (Trehar Dep. Ex. H). Additionally, approximately one month before Trehar's move, she told Takach about it. (Takach Dep. 18). Takach asked Trehar if

Griffin knew, and Trehar told her that he did.  (Takach Dep. 18).

**{¶24}** Griffin is Brightway's president and CEO.  (Griffin Dep. Vol. I, 11).  He is the person at Brightway with responsibility for day-to-day leadership and direction of the employees.  (Griffin Dep. Vol. II, 14).  Griffin stated that Brightway's employees are to rely on his statements and promises.  (Griffin Dep. Vol. II, 16).

**{¶25}** Brightway relies heavily on its employee handbook and the fact that Trehar was an employee at-will.  Brightway's employee handbook contains an "Employment at Will Policy" stating:

> Brightway Center does not offer tenured or guaranteed employment.  Either Brightway Center or the employee can terminate the employment relationship at any time, with or without cause, with or without notice.  This is called Employment At Will.
>
> This employment at will relationship exists regardless of any other written statements or policies contained in this Handbook or any other Brightway Center documents or any verbal statements to the contrary.

(Trehar Dep. Ex. F, p. 15).

**{¶26}** The handbook also contains a provision stating:  "Only a written agreement, signed by the Chief Executive Officer of Brightway Center, can change the "at will" nature of the employment of any individual."  (Trehar Dep. Ex. F, p. 6).  Trehar signed the handbook and was very familiar with it.  (Trehar Dep. 50-51).

**{¶27}** The handbook does little more than re-emphasize that Trehar was an employee-at will.  And an exception can be made to employment at-will by means of promissory estoppel.  Moreover, if in fact promissory estoppel exists in this case it would not alter Trehar's status as an employee at-will in all other respects.  Brightway could still fire her for any other reason.

**{¶28}** At the motion hearing, the trial court stated it would deny Brightway's summary judgment motion.  But two days later, when it entered its judgment, the

court granted summary judgment. In doing so, the trial court relied on this court's decision in *Dunn v. Bruzzese*, 172 Ohio App.3d 320.

**{¶29}** In that case, Dunn was the former judicial secretary to Judge Bruzzese. Dunn worked for Judge Bruzzese for almost 20 years during which time the judge made comments that he always wanted Dunn to be his secretary and complimented her work. But Judge Bruzzese fired Dunn after growing tired of her periods of inefficient work and her complaints. Dunn filed a complaint against Judge Bruzzese raising claims for age discrimination, breach of implied contract, and promissory estoppel. The trial court granted summary judgment in favor of Judge Bruzzese and Dunn appealed.

**{¶30}** On appeal, this court began its analysis by noting that Dunn was an at-will employee. *Id.* at ¶19. We went on to find that Judge Bruzzese did not make a clear and unambiguous promise to Dunn as was necessary to support a claim for promissory estoppel. *Id.* at ¶¶21-22. Analyzing the evidence, we found:

> In this case, Dunn has failed to demonstrate a genuine issue regarding whether Judge Bruzzese clearly and unambiguously promised that continued employment. The statements that Dunn relies upon are all either praise with respect to job performance, discussion of future career development, or promises of future opportunities. For instance, before he was elected to the Court of Common Pleas, Judge Bruzzese told Dunn that "he never wanted her to quit," that he was going to take Dunn to the court with him if he became a judge and pay her what she was worth, that he "always" wanted Dunn working for him, that she was "the greatest secretary ever" and he was looking forward to "10 (or 20)" more years with her, that "[h]e never wanted anything to happen that [Dunn] didn't work for him." Shortly after his election, Judge Bruzzese told Dunn, "[T]his is where we're going to retire from." At a later point in time, Judge Bruzzese was considering leaving the bench, but told Dunn's mother that her daughter would be okay because,

> "Where I go, Drema goes. The day that Drema retires is the day that I retire."

> Since none of these statements are clear, unambiguous promises of continued employment, Dunn cannot prove a claim of promissory estoppel and that the trial court properly granted summary judgment to Judge Bruzzese on this issue.

*Id.* at ¶¶ 24-25.

**{¶31}** The case at bar, however, is distinguishable from *Dunn*.  In *Dunn*, Judge Bruzzese made general statements that this court characterized as "praise with respect to job performance, discussion of future career development, or promises of future opportunities."  In this case, however, there is evidence Griffin silently assented to Trehar moving in with her boyfriend and his silence can be construed as a promise that no adverse employment action would come as a result of her move.  Other cases have stated that silence can be sufficient to establish a promissory estoppel claim.

**{¶32}** For instance, in *Hedrick v. Ctr. for Comprehensive Alcoholism Treatment*, 7 Ohio App. 3d 211, 214, 454 N.E.2d 1343 (1st Dist.1982), the First District, quoiting the Ohio Supreme Court stated:

> Promissory or equitable estoppel arises when " * * * 'one, by his acts, representations, or admissions, *or by his silence when he ought to speak out*, intentionally or through culpable negligence induces another to believe certain facts to exist, and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts. * * * ' * * * *." *London & Lancashire Indemnity Co. of America v. Fairbanks Steam Shovel Co.* (1925), 112 Ohio St. 136, 152, 147 N.E. 329 (quoting 21 C.J. 1113-1114, Estoppel, Section 116).

(Emphasis added.)

**{¶33}** And the Sixth District has observed:

In essence, the expression of estoppel in the form of a rule is that one party will not be permitted to deny that which, by his words, his acts, *or his silence (when there was an obligation to spea*k), he has induced a second party reasonably and in good faith to assume and rely upon to that party's prejudice or pecuniary disadvantage.

(Emphasis added.) *First Fed. Sav. & Loan Ass'n of Toledo v. Perry's Landing, Inc.*, 11 Ohio App. 3d 135, 145, 463 N.E.2d 636 (6th Dist.1983), citing 42 Ohio Jurisprudence 3d 56, 62-66, Estoppel, Sections 36-46. See also, *Nilavar v. Osborn*, 127 Ohio App. 3d 1, 17, 711 N.E.2d 726 (2d Dist.1998).

**{¶34}** We must construe the facts of this case in the light most favorable to Trehar. There are material facts in dispute. According to Trehar, Griffin congratulated her on her move with her boyfriend, Griffin granted Trehar permission to miss a work function in order to move, and Griffin was silent on the issue of Trehar moving in with her boyfriend. It is possible that these actions and inactions might be construed as a promise that Trehar would not be fired for her cohabitation and that Trehar relied on Griffin's silence on the issue. Reasonable people could conclude that if Griffin intended that Trehar's cohabitation would result in her termination, he should have spoken.

**{¶35}** In a promissory estoppel claim, the employer's subjective interpretation of the alleged promise does not control. *Mers* at 104-105. Instead, "the employer's representation is to be determined by what the 'promisor should reasonably expect' the *employee* to believe the promise means if expected action or forbearance results." (Emphasis sic.); *Id*. at 105. Assuming as true that Trehar told her boss she was going to move in with her boyfriend and he congratulated her instead of objecting to the move or advising her she could suffer adverse employment consequences, it may be construed as reasonable for her to believe she would not

be fired for cohabitating with her boyfriend.

**{¶36}** Griffin is Brightway's president and CEO. He stated that his employees should rely on his statements and promises. In construing the evidence in Trehar's favor, reasonable people could conclude that Trehar's boss and the president of the company induced Trehar to believe that no adverse employment action would result from her move. Thus, Trehar's promissory estoppel claim should have survived summary judgment.

**{¶37}** This is not to say that Trehar will necessarily prevail at trial. Genuine issues of material fact exist in this case. The parties dispute both the timing of the information to Griffin and its impact on him. When exactly Griffin learned of Trehar's intended move and his actions in response to this information are questions of fact for a jury. Therefore, the trial court erred in granting Brightway's motion for summary judgment.

**{¶38}** Accordingly, Trehar's sole assignment of error has merit.

**{¶39}** For the reasons stated above, the trial court's judgment is hereby reversed and the matter is remanded to the trial court for further proceedings.

Waite, J., concurs.
Robb, J., concurs.